

# In the Missouri Court of Appeals
# Eastern District

## DIVISION III

| | | |
|---|---|---|
| DONOVAN E. TATE, | ) | No. ED101060 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Rex Burlison |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent. | ) | FILED: April 14, 2015 |

## Introduction

Appellant Donovan Tate ("Tate") appeals from the judgment of the motion court, following an evidentiary hearing, denying his Rule 29.15[1] motion seeking to set aside his convictions for first-degree robbery and armed criminal action. A jury found Tate guilty of one count of first-degree robbery and one count of armed criminal action stemming from the robbery of a Boost Mobile store. Tate's convictions were affirmed by this Court on direct appeal in State v. Tate, 390 S.W.3d 265 (Mo. App. E.D. 2013). Tate subsequently filed a Rule 29.15 motion for post-conviction relief alleging that both trial counsel and appellate counsel provided ineffective assistance of counsel. Following an evidentiary hearing, the motion court denied Tate's Rule 29.15 motion. On appeal, Tate claims that the motion court clearly erred in denying his Rule

---

[1] All rule references are to Mo. R. Crim. P. (2013).

29.15 motion because Tate proved by a preponderance of the evidence that (1) appellate counsel was ineffective for failing to assert, on direct appeal, that the trial court erred in overruling Tate's Batson[2] challenge to the prosecution's peremptory strike of Juror 558, and (2) trial counsel was ineffective for failing to share with Tate certain incriminating video surveillance evidence and audio recording evidence prior to trial. Because the motion court did not clearly err in concluding that appellate counsel's decision not to pursue a Batson claim on appeal was a reasonable strategic decision, we affirm the judgment of the motion court denying Tate's Rule 29.15 motion alleging ineffective assistance of appellate counsel. Because the motion court did not clearly err in accepting trial counsel's testimony that Tate was adequately informed of the video and audio evidence, we affirm the judgment of the motion court denying Tate's Rule 29.15 motion alleging ineffective assistance of trial counsel.[3]

## Factual and Procedural History

Tate was charged as a persistent offender with one count of first-degree robbery and one count of armed criminal action stemming from the robbery of a Boost Mobile store. A jury trial was held before the trial court. At trial, the State introduced, among other evidence, surveillance video showing a suspect identified as Tate robbing the Boost Mobile store and entering a neighboring store prior to the robbery wearing the same clothes. The State also introduced an audio recording of an incriminating phone conversation between Tate and his girlfriend which took place while Tate was in jail awaiting trial.

During *voir dire* of the jury panel, the prosecutor had the following interaction with Juror 558, a black female:

---

[2] Batson v. Kentucky, 476 U.S. 79 (1986).
[3] Respondent raises procedural challenges with respect to both of Tate's ineffective assistance claims regarding the sufficiency of the pleadings to pursue an appeal. We will address the merits of each claim.

2

PROSECUTOR: Anyone else in the back row? I did see a lady in the middle row nodding. [Juror 558], I saw you nodding your head, maybe you're just keeping up.

JUROR 558: Just keeping up, I don't have a problem.

PROSECUTOR: If that question's not resolved, you could still deliberate in this case?

JUROR 558: Yes.

PROSECUTOR: Thank you, ma'am, thank you for letting me pick on you.

...

PROSECUTOR: And [Juror 558], I just wanted to make sure there wasn't anything else because you have a low voice.

JUROR 558: There wasn't anything else, and I really wasn't trying to get your attention.

PROSECUTOR: Fair warning. I will call on you if it looks like you're trying to get my attention. I don't want to miss anybody. I hope I didn't embarrass you too much. Thank you.

The State subsequently exercised one of its peremptory strikes to exclude Juror 558 from the jury. Trial counsel made a timely Batson challenge. The prosecutor responded by articulating three reasons for the peremptory strike of Juror 558. The first reason was that Juror 558 wore a hat during *voir dire*, which differentiated her from the rest of the panel members. The second was that Juror 558 was the only person on the panel who stated that she worked in the child care field. The third reason, which the prosecutor stated was the "main reason" for striking Juror 558, was her demeanor. The prosecutor explained that "I tried to talk to her... I feel like it upset her, she shut down, she mumbled a little bit, and I feel like I alienated her." The prosecutor further explained that her attempt to engage Juror 558 had a negative effect: "I feel like it had a chilling effect on her... I noticed several times she would nod along, or it seemed

3

like she was contributing, but she never raised her hand, so that's why when I tried to single her out, I feel like it had a chilling effect on her." The trial court denied trial counsel's <u>Batson</u> challenge, reasoning as follows:

> "[T]he Court believes that the prosecutor has articulated a general, gender or race-neutral explanation for her striking. I believe that the reason, the primary reason is that she, counsel had a feeling that the potential juror shied away from her, and the Court did notice that the juror did look down after she was asked a question. I believe that that is sufficient for a race-neutral explanation."

Tate was found guilty of both counts and sentenced to concurrent 25-year prison terms. This Court affirmed Tate's convictions on direct appeal in <u>State v. Tate</u>, 390 S.W.3d 265 (Mo. App. E.D. 2013). On direct appeal, appellate counsel chose not to raise a claim that the trial court erred in overruling Tate's <u>Batson</u> challenge to the State's peremptory strike of Juror 558.

Tate filed a *pro se* Rule 29.15 motion for post-conviction relief. Appointed counsel filed an amended motion alleging, *inter alia*, that appellate counsel was ineffective for failing to assert a <u>Batson</u> claim on direct appeal and that trial counsel was ineffective for failing to share the video surveillance and audio recording evidence with Tate prior to trial.

With regard to the claim relating to appellate counsel, Tate argued that raising the <u>Batson</u> issue with respect to the peremptory strike on Juror 558 on appeal should have been plain and obvious to a reasonably competent attorney. Tate further alleged that if appellate counsel had raised the <u>Batson</u> issue, there is a reasonable probability this Court would have found that the State's peremptory strike of Juror 558 was pretextual and reversed and remanded Tate's case for a new trial.

With regard to the claim relating to trial counsel, Tate argued that a reasonably competent attorney would have shared the surveillance video and audio evidence with Tate prior trial. Tate further alleged that if trial counsel had shared the evidence with him prior to trial, there is a

4

reasonable likelihood that Tate would not have chosen to exercise his right to trial, but rather, would have pleaded guilty.

The motion court held an evidentiary hearing on Tate's amended motion. Appellate counsel testified that she fully considered the Batson issue and made a strategic decision not to raise such a claim on appeal. Appellate counsel testified that while the Batson issue was properly preserved for appeal, she chose not to raise the issue because she "didn't feel it was a good claim." Appellate counsel explained that she arrived at this conclusion due to the lack of support in the record for raising a Batson claim. Appellate counsel further testified that she was experienced in raising Batson claims on appeal and was familiar with the Batson requirements. Appellate counsel testified that, based on her experience and her review of the record, there was insufficient evidence in the record to conclude that a Batson claim would have been successful on direct appeal. Appellate counsel also explained her strategy when deciding which claims to bring on appeal and which to omit:

> "Well, it's sort of my opinion that if you have several issues that are really strong issues that have a lot of support in the record, a lot of legal support, where you throw in a[n] issue where you don't have as much support, that isn't necessarily going to help the other things. I don't really take the approach of kind of throwing everything at the wall to see what sticks."

The motion court also heard testimony from Trial counsel and Tate regarding the video and audio evidence. Trial counsel testified that she did not arrange for Tate to listen to the audiotape prior to trial, but that she made Tate aware that his conversations with his girlfriend had been recorded and identified the incriminating portion of the audiotape. Trial counsel also testified that she told Tate how the audiotape might negatively affect his case, and that she made it clear to Tate he would likely be found guilty at trial based upon the ample evidence against

5

him.[4] Trial counsel added that although Tate did not listen to the audiotape, she "expected that [Tate] knew exactly what he had been saying to [his girlfriend]." Trial counsel further testified that Tate had an opportunity to view the surveillance video in the courtroom prior to the beginning of the trial. Trial counsel also testified that she discussed with Tate the evidence against him, including the surveillance video and audiotape, and how damaging it would be to his case. Trial counsel testified that she explained to Tate why he should consider pleading guilty and that she did not feel Tate could escape conviction due to the amount of evidence against him. Trial counsel testified that Tate insisted upon proceeding to trial.

Tate testified that trial counsel did not give him an opportunity to view the surveillance video prior to trial, and that the first and only time he saw the video was when it was played at trial. Tate admitted that he was aware of the existence of the surveillance video, but maintained that he never viewed the video prior to the trial. Tate testified that had he been aware of the nature of the surveillance video prior to trial, he would not have gone to trial but would have instead entered a blind guilty plea. Tate also testified that he never listened to the audiotape prior to trial and was not even aware of its existence until trial. Tate testified that had he been aware of the audiotape prior to trial, he would not have gone to trial but would have instead entered a blind guilty plea.

The motion court subsequently entered its Findings of Fact, Conclusions of Law and Order denying Tate's Rule 29.15 motion for post-conviction relief. The motion court found Tate's ineffective assistance of counsel claim against appellate counsel to be without merit. The motion court concluded that the trial court reasonably found that the prosecutor's reason for striking Juror 558 was race-neutral and proper based on Juror 558's demeanor and body

---

[4] In addition to the surveillance video and audiotape, trial counsel was aware that the State planned to introduce evidence that Tate's fingerprints were found on a note used in the robbery, as well as testimony from a handwriting expert that Tate's handwriting matched the writing on the note.

6

language. The motion court further concluded that appellate counsel did not, as Tate alleged, overlook the Batson issue but rather chose not to raise the Batson issue on appeal for strategic reasons. The motion court noted that appellate counsel had no duty to raise every issue on appeal, particularly where she decided to strategically winnow out some issues in favor of others.

The motion court similarly found Tate's ineffective assistance of counsel claim against trial counsel to be without merit. The motion court concluded that Tate's testimony at the evidentiary hearing was "not credible with respect to his familiarity with the evidence and his desire to plead guilty rather than go to trial." The motion court further concluded that Tate was aware of the surveillance video and the audio tape, and that trial counsel's testimony that she discussed both pieces of evidence with Tate was "highly credible." Finally, the motion court found that trial counsel's testimony that she "tried to get [Tate] to plead guilty was also highly credible." This appeal follows.

## Points on Appeal

Tate presents two points on appeal. In his first point on appeal, Tate contends that the motion court clearly erred in denying his Rule 29.15 motion after an evidentiary hearing because Tate proved by a preponderance of the evidence that he was denied effective assistance of appellate counsel. Specifically, Tate claims that appellate counsel was ineffective for failing to assert, on direct appeal, that the trial court erred in overruling Tate's Batson challenge to the prosecution's peremptory strike of Juror 558. Tate maintains that had trial counsel raised the Batson claim on direct appeal, there is a reasonable probability that the outcome of his direct appeal would have been different. In his second point on appeal, Tate contends that the motion court clearly erred in denying Tate's Rule 29.15 motion after an evidentiary hearing because Tate proved by a preponderance of the evidence that he was denied effective assistance of trial counsel. Specifically, Tate claims that trial counsel was ineffective for failing to share with Tate

7

the incriminating video surveillance evidence and audiotape evidence prior to trial. Tate maintains that had trial counsel done so, Tate would not have exercised his right to trial but instead would have pleaded guilty.

## Standard of Review

Appellate review of a motion court's denial of a Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15; Day v. State, 770 S.W.2d 692, 695 (Mo. banc 1989). The motion court's findings and conclusions are presumptively correct and will be overturned only when this Court, after reviewing the entire record, is left with a "definite and firm impression that a mistake has been made." Vaca v. State, 314 S.W.3d 331, 334 (Mo. banc 2010).

## Discussion

In order to prevail on a claim of ineffective assistance of counsel, a movant must show by a preponderance of the evidence that (1) his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and (2) he was prejudiced thereby. Sanders v. State, 738 S.W.2d 856, 857 (Mo. banc 1987) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To satisfy the performance prong of the Strickland test, a movant must overcome the strong presumption that any challenged action was sound legal strategy. To overcome this presumption, a movant must point to "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." Zink v. State, 278 S.W.3d 170, 176 (Mo. banc 2009). To satisfy the prejudice prong, the movant must demonstrate that, absent the claimed errors, there is a reasonable probability that the outcome of the proceeding would have been different. Id.

8

A movant must satisfy both the performance prong and the prejudice prong to prevail on an ineffective assistance of counsel claim. Sanders, 738 S.W.2d at 857. In reviewing such a claim, we are not required to consider both prongs; if the movant fails to satisfy one prong, we need not consider the other. Id.

I.     **The motion court did not clearly err in denying Tate's claim alleging ineffective assistance of appellate counsel.**

The standard for reviewing a claim of ineffective assistance of appellate counsel is essentially the same as that used in a claim against trial counsel. Mallett v. State, 769 S.W.2d 77, 83 (Mo. banc 1989). To satisfy the performance prong of the Strickland test, a movant must overcome the strong presumption that appellate counsel provided adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. McCain v. State, 317 S.W.3d 657, 660 (Mo. App. S.D. 2010). To overcome this presumption, a movant must show that appellate counsel "failed to assert a claim of error which would have required reversal had it been asserted and which was so obvious from the record that a competent and effective attorney would have recognized and asserted it." Reuscher v. State, 887 S.W.2d 588, 591 (Mo. banc 1994). To be entitled to relief, the movant must show that the error not raised by appellate counsel was "so substantial as to amount to a manifest injustice or a miscarriage of justice." Storey v. State, 175 S.W.3d 116, 148 (Mo. banc 2005). To satisfy the prejudice prong, the movant must demonstrate that the claimed error was sufficiently serious that, if it had been raised, there is a reasonable probability the outcome of the appeal would have been different. Tisius v. State, 183 S.W.3d 207, 215 (Mo. banc 2006).

There is a strong presumption that appellate counsel's conduct fell within the "wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Tate bears the burden of overcoming that presumption by showing that, in light of the circumstances, trial counsel's

9

decision not to raise a <u>Batson</u> claim on appeal was not a reasonable legal strategy. <u>Id.</u> A decision made by counsel based on reasonable legal strategy is virtually unchallengeable; rarely will a strategic decision of counsel be declared so unsound as to constitute ineffective assistance of counsel. <u>State v. Sanders</u>, 903 S.W.2d 234, 240 (Mo. App. E.D. 1995); <u>Malady v. State</u>, 748 S.W.2d 69, 72 (Mo. App. S.D. 1988). The reasonableness of appellate counsel's strategic decision must be viewed as of the time the decision occurred, taking into consideration the circumstances of the case. <u>Strickland</u>, 466 U.S. at 689. In addition, appellate counsel has no duty to raise every non-frivolous claim on appeal. <u>See</u> <u>Jones v. Barnes</u>, 463 U.S. 745 (1983). This is particularly the case where, as here, appellate counsel makes a strategic decision to omit weaker arguments in favor of raising stronger claims on appeal: "[A]ppellate counsel has no duty to raise every possible issue asserted in the motion for new trial on appeal, and no duty to present non-frivolous issues where appellate counsel strategically decides to winnow out arguments in favor of other arguments." <u>Baumruk v. State</u>, 364 S.W.3d 518, 539 (Mo. banc 2012).

The Equal Protection Clause of the United States Constitution prohibits a party from using a peremptory challenge to remove a potential jury member solely on the basis of gender, ethnic origin, or race. <u>United States v. Martinez-Salazar</u>, 528 U.S. 304, 315 (2000). A claim that a peremptory strike was based on any impermissible ground is commonly referred to as a <u>Batson</u> challenge and requires three steps. First, the challenging party must establish a prima facie showing of purposeful discrimination by identifying one or more stricken venire panel members and the cognizable group to which they belong. <u>State v. Parker</u>, 836 S.W.2d 930, 933 (Mo. banc 1992). Second, the burden shifts to the party that made the peremptory strike to offer a race- or gender-neutral explanation for the strike. <u>Id.</u> at 934. Third, the trial court must determine

10

whether the challenging party has established purposeful discrimination. To succeed, the challenging party must show that the explanation offered for the strike was pretextual and that the true reason for the strike was racial. Id.

The record before us clearly reflects that appellate counsel made an intentional, strategic decision not to raise a Batson claim on appeal, and that her decision was reasonable. Appellate counsel's testimony was unambiguous that she was familiar with Batson claims and the three-step approach involved, had raised Batson challenges in the past, and had a firm understanding of the legal requirements for bringing a successful claim. Appellate counsel testified that she carefully considered the issue before ultimately concluding that the record was insufficient to support a Batson challenge, such that the claim would not have been meritorious. Specifically, appellate counsel noted that the race of Juror 558 was never identified in the trial transcript of the Batson challenge, that the race-neutral explanation for the strike that was given – Juror 558's demeanor – was reasonable, and that there was simply not enough information in the record to make an argument for the third required step of a Batson challenge.

Rather than include a non-meritorious Batson claim unsupported by the record, appellate counsel made the strategic choice to focus Tate's direct appeal on other, stronger claims with greater chances for success. Appellate counsel's decision was a reasonable strategy based upon appellate counsel's professional judgment, made after a careful analysis of the Batson issue and the record. Appellate counsel's conduct falls well within the wide range of reasonable professional assistance. Tate has failed to prove that appellate counsel's strategy was anything but reasonable. Because Tate failed to prove the performance prong of Strickland, the motion court did not clearly err in denying Tate's Rule 29.15 motion alleging ineffective assistance of appellate counsel. Point One is denied.

11

**II. The motion court did not clearly err in denying Tate's claim alleging ineffective assistance of trial counsel.**

The core of Tate's claim alleging ineffective assistance of trial counsel is Tate's allegation that he had no opportunity to listen to the audiotape or view the surveillance video prior to trial; was completely unaware of the existence of the audiotape prior to trial; and was unaware of the incriminating nature of the surveillance video prior to trial. Tate maintains that had he been made aware of the existence of the audiotape and the nature of the surveillance video prior to trial, he would have chosen to plead guilty rather than proceed to trial.

During the evidentiary hearing, the motion court elicited testimony from both Tate and trial counsel regarding these allegations. Trial counsel testified that although she did not arrange for Tate to listen to the audiotape prior to trial, she made Tate aware that his conversations with his girlfriend had been recorded, and identified for Tate the damaging portion of the audiotape to his case. Trial counsel also testified that she explained to Tate how the audiotape might negatively affect his case, and that she "expected that [Tate] knew exactly what he had been saying to [his girlfriend]." Trial counsel further testified that Tate had an opportunity to view the surveillance video prior to the beginning of the trial. Trial counsel stated that she discussed the video and audio evidence with Tate and explained how damaging such evidence would be to his case. Finally, trial counsel testified that she encouraged Tate to plead guilty, but he insisted upon proceeding to trial. Tate testified that although he was aware of the existence of the surveillance video, he never had an opportunity to view it prior to trial. Tate maintained that had he been aware of the nature of the surveillance video prior to trial, he would not have gone to trial but would have instead entered a blind guilty plea. Tate also testified that he never listened to the audiotape prior to trial, nor was he aware of its existence until trial. Tate testified that had he

12

been aware of the audiotape prior to trial, he would not have gone to trial but would have instead entered a blind guilty plea.

In denying Tate's claim of ineffective assistance of trial counsel, the motion court made credibility determinations based on the testimony at the evidentiary hearing. The motion court concluded that trial counsel's testimony that she discussed the surveillance video and audiotape with Tate and encouraged Tate to plead guilty was "highly credible." Conversely, the motion court found that Tate's testimony was "not credible with respect to his familiarity with the evidence and his desire to plead guilty rather than go to trial," and concluded that Tate was in fact aware of the surveillance video and audiotape. For these reasons, the motion court denied Tate's Rule 29.15 motion with respect to trial counsel's performance.

At a post-conviction relief evidentiary hearing, the motion court determines the credibility of the witnesses and is free to believe or disbelieve the testimony of any witness, including the movant. Hurst v. State, 301 S.W.3d 112, 117 (Mo. App. E.D. 2010). On appeal, we presume that the motion court's findings and conclusions are correct and defer to the motion court's determinations of credibility, as the motion court has a "superior opportunity to judge the credibility of the witnesses." State v. Twenter, 818 S.W.2d 628, 635 (Mo. banc 1991). Here, the motion court made clear that it found trial counsel's testimony highly credible in all respects and Tate's testimony not credible with respect to both his familiarity with the audio and video evidence as well as his desire to plead guilty rather than proceed to trial. The motion court was free to accept trial counsel's testimony that Tate was adequately informed of both the video and audio evidence and that trial counsel advised Tate to plead guilty in light of the evidence, and to reject Tate's testimony to the contrary. In light of the motion court's credibility findings, we find that Tate's claim of ineffective assistance of trial counsel is not supported by the record.

13

Accordingly, the motion court did not clearly err in denying Tate's Rule 29.15 motion alleging ineffective assistance of trial counsel. Point Two is denied.

<u>Conclusion</u>

The motion court did not clearly err in denying Tate's claims alleging ineffective assistance of counsel. The judgment of the motion court denying Tate's Rule 29.15 motion for post-conviction relief is affirmed.

Kurt S. Odenwald, Presiding Judge

Robert G. Dowd, Jr., J., Concurs
Gary M. Gaertner, Jr., J., Concurs

14