

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| ANTHONY WALLACE, | ) | No. ED106604 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Paula Perkins Bryant |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent. | ) | FILED: April 16, 2019 |

## Introduction

Anthony Wallace ("Wallace") appeals from the motion court's denial of his Rule 29.15[1] motion seeking post-conviction relief without an evidentiary hearing. The trial court convicted Wallace on five counts finding that Wallace broke into a woman's car, drove away with the woman, attempted to have the woman perform oral sex on him, injured the woman, and left the woman naked and semi-conscious. We affirmed Wallace's competence to stand trial in a previous appeal. Wallace now presents three points on appeal alleging the motion court erred in denying his Rule 29.15 motion because both trial and appellate counsels were ineffective. Specifically, Wallace contends that trial counsel was ineffective for failing to raise mitigating evidence at his sentencing. Wallace asserts that appellate counsel was ineffective for failing to raise sufficiency-of-the-evidence claims for robbery in the second degree and attempted forcible

---

[1] All Rule references are to Mo. R. Crim. P. (2015).

rape. Because the trial court was fully informed of Wallace's mental challenges at sentencing, and because the record contains substantial evidence supporting the required elements of robbery in the second degree and attempted forcible rape, we affirm the motion court's judgment.

Factual and Procedural History

Wallace approached a car parked outside a bar with the engine running. A woman ("Victim") who had been drinking inside the bar earlier was sleeping in the car. A security video showed Wallace trying to open the car door and knocking on the window. Wallace walked away and came back with a large object, which he used to break the driver's side window. Wallace entered the car and drove away while Victim was inside the car.

Victim woke to the sound of the car window breaking. Victim asked Wallace to let her out of the car and offered him money. Wallace punched Victim in the face several times and told her to "shut up." Wallace then took out his genitals and tried to force Victim's head toward his groin. Wallace told Victim to suck his penis. Victim resisted. To escape, Victim jumped from the moving car and ran up some stairs toward what she thought was a church. Wallace followed, grabbed Victim, and forced her back into the car. Wallace got back in the car and began to drive.

While Wallace was driving, Victim grabbed the steering wheel causing it to collide with a parked vehicle. Victim ran from the car, but Wallace caught up to her in an alley. Victim could not recall anything after Wallace caught up with her again. A man who lived nearby heard Victim scream and saw Wallace pulling on Victim's clothes. The man called the police.

Police arrived and found Victim naked and semi-conscious in the alley. Victim suffered a fractured nose, fractured eye sockets, bleeding on the brain, a blood clot, and numerous scrapes and bruises. Hospital staff performed a rape kit, which was negative for seminal fluid.

2

Police found Victim's car less than one block away from where they found Victim. From inside and around the car, police seized a yellow skull cap, a purse with blood on it, a black jacket, a black shoe, and the deployed air bags. A DNA analyst identified the DNA of three individuals on the cap, with Wallace as the major contributor. The DNA analyst also matched Wallace's DNA to DNA recovered from the driver's side airbag of Victim's car. Victim viewed a photographic lineup and identified Wallace's photograph.

The State charged Wallace with one count each of assault in the first degree, robbery in the first degree, attempted forcible rape, attempted forcible sodomy, and kidnapping. The case commenced to trial.

Before trial, Wallace's trial counsel moved to declare Wallace incompetent to stand trial. Trial counsel offered the report of Dr. Rachael Springman ("Dr. Springman") to support a finding of incompetency. The circuit court ordered an evaluation by Dr. Tracey Fintel ("Dr. Fintel"), a forensic examiner with the Missouri Department of Mental Health. The circuit court then held a competency hearing. At the competency hearing, both doctors testified that they had reviewed Wallace's special school district records, his health and criminal records, as well as the police reports in the present case. Both doctors evaluated Wallace in person, and both concluded that Wallace had mild mental retardation and antisocial personality disorder. Additionally, Dr. Springman found that Wallace's IQ is 59.

Dr. Springman administered three objective tests, including the Competence Assessment for Standing Trial for Defendants with Mental Retardation (the "CAST–MR"). The first part of the CAST–MR, called understanding case events, evaluated whether Wallace could recount the details of his arrest in a clear and coherent manner. Wallace answered ninety-five percent of the questions correctly, which is consistent with a person who is mentally competent. The second

3

part of the test, the skills to assist the defense, addressed the functions of an attorney. Wallace scored sixty percent, which falls between competency and incompetency. On the third part of the test, basic legal concepts, Wallace scored sixty-four percent, which also falls between competency and incompetency.

Based on the objective tests and her interview with Wallace, Dr. Springman opined that Wallace was not competent to stand trial at the time of the evaluation. Dr. Springman found that Wallace had difficulty understanding several things: the concepts of maximum and minimum sentences, the role of courtroom personnel, the relation of the paperwork containing his charges to the reality of the charges, the weight of DNA evidence and its effect on options for approaching his defense, the meaning of the word "attempted" in some of the charged crimes, and some of the statements police officers made during Wallace's interrogation. Dr. Springman did not believe Wallace had the ability to understand court proceedings. However, Dr. Springman believed Wallace could be restored to competency with training and education.

Dr. Fintel conducted a forensic interview of Wallace, but she did not administer any objective-competency tests. Dr. Fintel evaluated Wallace's memory for recent events, attention, and concentration; she found no deficits. When discussing Wallace's criminal charges with him, Dr. Fintel believed Wallace understood and appreciated the seriousness of the charges against him. Dr. Fintel had reviewed Dr. Springman's report. Dr. Fintel testified that Wallace's understanding of the roles of court personnel seemed improved from the time Wallace saw Dr. Springman. Wallace understood legal concepts even if he did not know the precise terms for them. Dr. Fintel observed that Wallace was dissatisfied with trial counsel and he did not trust trial counsel, but Wallace understood he needed to tell trial counsel everything truthfully in order to be represented adequately. Dr. Fintel believed Wallace's lack of trust in trial counsel

4

stemmed from Wallace's antisocial personality disorder. Wallace also understood the role of witnesses, that he had the option of testifying or not testifying, and the role of the jury. Dr. Fintel concluded that Wallace did not lack mental fitness to proceed.

The circuit court considered the testimony of Drs. Springman and Fintel, as well as both of their reports, and concluded Wallace was competent to stand trial. The circuit court then placed Wallace's case on the trial docket. Wallace waived his right to a jury trial. After a bench trial, the trial court found Wallace guilty of one count of assault in the first degree, one count of robbery in the second degree, one count of attempted forcible rape, one count of attempted forcible sodomy, and one count of kidnapping.

At sentencing, trial counsel contested the circuit court's finding that Wallace was competent to stand trial. Further, trial counsel reasoned that the two doctors' reports and their findings of Wallace's numerous mental deficiencies was "very strong mitigating evidence." The sentencing court sentenced Wallace to concurrent sentences of thirty and fifteen years on the first-degree assault and second-degree robbery counts, to be served consecutively with concurrent life sentences for the attempted-forcible-rape and attempted-sodomy counts, and fifteen years for the kidnapping count. Wallace expressed no complaints regarding the effectiveness of trial counsel.

Wallace appealed his convictions, alleging error in the circuit court's ruling that he was competent to stand trial. We affirmed Wallace's competency to stand trial. State v. Wallace, 399 S.W.3d 921, 925 (Mo. App. E.D. 2013). Specifically, when evaluating the doctors' assessments of Wallace, we found that both doctors established that Wallace fell somewhere between competent and incompetent; they also both agreed that Wallace could be competent to stand trial. Id. at 924. We deferred to the circuit court's finding that Wallace was competent to

5

stand trial and held that there was substantial evidence in the record supporting the circuit court's conclusion. Id. at 924–25.

Wallace timely filed a pro-se motion seeking post-conviction relief under Rule 29.15. The motion court appointed counsel, and post-conviction-relief counsel filed the amended motion out of time. On appeal, we reversed the motion court's denial of Wallace's Rule 29.15 motion and remanded the case to the motion court to determine if post-conviction-relief counsel abandoned Wallace. Wallace v. State, 487 S.W.3d 62, 65 (Mo. App. E.D. 2016). The motion court found Wallace was abandoned. The motion court then considered and denied Wallace's motion for post-conviction relief without an evidentiary hearing. Specifically, the motion court found that the sentencing court was aware of Wallace's low IQ which had been subject to a competency hearing in another division, had already heard the relevant mental-health evidence, and the record supporting Wallace's convictions. Accordingly, any insufficient-evidence arguments would have been meritless. Wallace now appeals.

## Points on Appeal

Wallace raises three points on appeal arguing the motion court clearly erred in denying his amended motion for post-conviction relief without an evidentiary hearing because trial counsel and appellate counsel were ineffective. Point One maintains trial counsel was ineffective for failing to raise mitigating evidence of Wallace's intellectual disability at sentencing. Points Two and Three allege appellate counsel was ineffective for failing to raise sufficiency-of-the-evidence claims regarding the offenses of robbery in the second degree and attempted forcible rape.

## Standard of Review

We review the motion court's denial of a Rule 29.15 motion to determine whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k);

6

Creighton v. State, 520 S.W.3d 416, 418 (Mo. banc 2017). The motion court's findings of fact and conclusions of law "are clearly erroneous only if a full review of the record leaves the reviewing court with the definite and firm impression that a mistake has been made." Id. (internal quotations omitted). On review, the motion court's findings and conclusions are presumptively correct. Barmettler v. State, 399 S.W.3d 523, 526 (Mo. App. E.D. 2013).

Discussion

**I.     The Strickland[2] Standard and Evidentiary-Hearing Standard**

To succeed on an ineffective-assistance-of-counsel claim, the movant must satisfy by a preponderance of the evidence that his or her defense counsel failed to meet the two-prong test established in Strickland v. Washington, 466 U.S. 668 (1984). Anderson v. State, 564 S.W.3d 592, 600 (Mo. banc 2018). Under Strickland, the movant must establish that: "(1) defense counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would in a similar situation, and (2) [the movant] was prejudiced by that failure." McIntosh v. State, 413 S.W.3d 320, 324 (Mo. banc 2013) (citing Strickland, 466 U.S. at 687).

The movant "must overcome the strong presumption that trial counsel's conduct was reasonable and effective." Davis v. State, 486 S.W.3d 898, 906 (Mo. banc 2016). To overcome this strong presumption, the movant "must identify specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." Anderson, 564 S.W.3d at 600. Trial-strategy decisions may constitute ineffective assistance of counsel only if that decision was unreasonable. Davis, 486 S.W.3d at 906. "[S]trategic choices made after a thorough investigation of the law and the facts relevant to plausible opinions are virtually unchallengeable[.]" Anderson, 564 S.W.3d at 600.

---

[2] Strickland v. Washington, 466 U.S. 668 (1984).

The movant must also demonstrate prejudice under Strickland. Id. at 601. "Prejudice occurs when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. (quoting Deck v. State, 68 S.W.3d 418, 429 (Mo. banc 2002)). "A reasonable probability exists when there is a probability sufficient to undermine confidence in the outcome." Tisius v. State, 519 S.W.3d 413, 420 (Mo. banc 2017) (quoting McLaughlin v. State, 378 S.W.3d 328, 337 (Mo. banc 2012)).

"The standard for reviewing a claim of ineffective assistance of appellate counsel is essentially the same as that used in a claim against trial counsel." Tate v. State, 461 S.W.3d 15, 22 (Mo. App. E.D. 2015). To overcome the strong presumption that appellate counsel was effective, the movant must show that appellate counsel "failed to assert a claim of error which would have required reversal had it been asserted and which was so obvious from the record that a competent and effective attorney would have recognized and asserted it." Id. (quoting Reuscher v. State, 887 S.W.2d 588, 591 (Mo. banc 1994)). Appellate counsel has "no duty to present non-frivolous issues where appellate counsel strategically decides to winnow out arguments in favor of other arguments." Id. at 23 (quoting Baumruk v. State, 364 S.W.3d 518, 539 (Mo. banc 2012)). Further, appellate counsel is not ineffective for failing to raise a meritless claim. Morse v. State, 462 S.W.3d 907, 913 (Mo. App. E.D. 2015). If the movant does not prove either Strickland prong, then we need not consider the remaining prong, and the ineffective-assistance-of-counsel claim must fail. Taylor v. State, 403 S.W.3d 683, 686 (Mo. App. W.D. 2013).

When reviewing Rule 29.15 motions, the movant is entitled to an evidentiary hearing only if he pleaded facts, not mere conclusions, unrefuted by the record, which if true would warrant relief; the matters complained of must also result in prejudice to the movant. DePriest v.

8

State, 510 S.W.3d 331, 338 (Mo. banc 2017). The movant is not entitled to an evidentiary hearing where the record conclusively shows the movant is not entitled to relief. Rule 29.15(h); DePriest, 510 S.W.3d at 342.

## II.    Point One—Mitigating Evidence

Wallace contends that the motion court erred in denying his Rule 29.15 post-conviction-relief motion without an evidentiary hearing because trial counsel did not present mitigating evidence of Wallace's mental health at the sentencing phase. Specifically, Wallace posits that trial counsel was ineffective for failing to present evidence indicating how Wallace's mental impairments affected his day-to-day life, Wallace's actual degree of functioning, Wallace's understanding of the charges, Wallace's comprehension of his responsibility, or the bevy of cognitive tests performed on Wallace.

We recognize that trial counsel has a "duty to make a reasonable investigation of possible mitigating evidence or to make a reasonable decision that such an investigation is unnecessary." State v. Harris, 870 S.W.2d 798, 815 (Mo. banc 1994) (internal quotations omitted). Critical here, even had trial counsel failed to present mitigating evidence of Wallace's mental status at the time of his sentencing, Wallace cannot demonstrate that he was prejudiced by such failure. Thus, we need not discuss trial counsel's performance here and focus on the prejudice prong. See Taylor, 403 S.W.3d at 686.

This appeal does not allege trial counsel's failure to investigate the existence of a defendant's mental illness. See Vaca v. State, 314 S.W.3d 331, 336 (Mo. banc 2010) (citing State v. Ferguson, 20 S.W.3d 485, 509 (Mo. banc 2000); Williams v. State, 168 S.W.3d 433, 441 (Mo. banc 2005)). Rather, the record amply demonstrates that trial counsel presented evidence of Wallace's mental challenges during the competency hearing and the circuit court found Wallace competent to stand trial. Important to our analysis, both Wallace's guilt and sentencing

9

were determined by the trial court. Contra Vaca, 314 S.W.3d at 336 (reviewing failure to present mitigating mental-health evidence in a jury-tried sentencing procedure); Radmer v. State, 362 S.W.3d 52, 57 (Mo. App. W.D. 2012) (finding trial counsel was ineffective for failing to call an expert regarding the defendant's mental capacities during sentencing phase of a jury trial).

Wallace alleges prejudice because mental-health expert testimony was not presented at the sentencing phase of his trial. Specifically, Wallace claims that a mental-health expert would have educated the sentencing court to Wallace's many and varied mental limitations, including Wallace's capabilities, the effects of drugs on Wallace's capacity to plan or understand the wrongfulness of his actions, and Wallace's refusal to take responsibility for his actions.

We reject Wallace's claim because the record shows that the sentencing court evaluated evidence of Wallace's IQ, Wallace's brutal attack against Victim, Wallace's refusal to take responsibility for his conduct, Wallace's drug abuse, Wallace's rating as a very high risk for a male sex offender, and the circuit court's finding that Wallace was competent to stand trial. Further, the record details trial counsel's efforts to persuade the sentencing court that Wallace may not have been competent to stand trial due to his mental deficiencies, and specifically mentioned Wallace's mental retardation and antisocial personality disorder. The record shows that the sentencing court was aware of Wallace's mental limitations at the time of sentencing. Any further evidence regarding Wallace's mental capabilities or limitations in the sentencing phase would have been cumulative. See McLaughlin, 378 S.W.3d at 343 ("Failure to present evidence that is cumulative to that presented at trial does not constitute ineffective assistance of counsel."); see also Forrest v. State, 290 S.W.3d 704, 715 (Mo. banc 2009) (finding no prejudice where the jury heard evidence of the contested expert's underlying evidence and could have independently evaluated the evidence without assistance from the expert's testimony). Because

10

Wallace's claims are clearly refuted by the record, the motion court did not clearly err in denying Wallace's motion without an evidentiary hearing. Rule 29.15(h); see DePriest, 510 S.W.3d at 342. Point One is denied.

## III. Points Two and Three—Sufficiency of the Evidence

Wallace alleges in Point Two that appellate counsel was ineffective for failing to challenge the sufficiency of the evidence supporting the force element of Wallace's second-degree robbery conviction on direct appeal. Wallace argues in Point Three that appellate counsel similarly was ineffective for failing to challenge the sufficiency of the evidence supporting the substantial-step element of his attempted forcible rape conviction.

### A. Second-Degree Robbery

Second-degree robbery is defined as forcibly stealing property. Section 569.030.[3] A person "forcibly steals" if "in the course of stealing, . . . he uses or threatens the immediate use of physical force upon another person for the purpose of" either defeating resistance to the theft or compelling the surrender of the property. Section 569.010(1); see also State v. Coleman, 463 S.W.3d 353, 354 (Mo. banc 2015). "[D]etermining the existence of a threat is an objective test that depends on whether a reasonable person would believe the defendant's conduct was a threat of the immediate use of physical force." Coleman, 463 S.W.3d at 355. "[A]s a matter of general law the force necessary to constitute robbery may be constructive as well as actual, and may consist in the intimidation of the victim, or putting him in fear." State v. Foster, 665 S.W.2d 348, 350 (Mo. App. S.D. 1984). The threat or use of physical force must come from the defendant and must be imparted upon the victim. See State v. Ide, 933 S.W.2d 849, 853 (Mo. App. W.D. 1996).

---

[3] All Section references are to RSMo (2000) unless otherwise noted.

Wallace's first claim of ineffectiveness by appellate counsel focuses on counsel's failure to contest the force element of his second-degree robbery conviction. Specifically, Wallace reasoned that he had already taken the Victim's car before any force was applied on Victim and that Victim offered no resistance to the taking because she was unconscious at the time. Accordingly, Wallace argues that the force he displayed was for the sole purpose of retaining Victim's car. Wallace adds that his repeated abandonment of the car to pursue Victim denotes his lack of intent to permanently deprive Victim of her car. Certainly, Wallace could and did present these theories to the trial court. Nevertheless, the record contains sufficient evidence to support the trial court's finding that Wallace committed robbery in the second degree.

Wallace broke Victim's car window with a blunt object while she was inside the car. The stealing commenced when Wallace began driving the car. See State v. Hargrave, 915 S.W.2d 387, 390 (Mo. App. W.D. 1996) (finding stealing when the defendant had control over the property adverse to the ownership rights of the owner, even for an instant, and moved the property a short distance). Wallace repeatedly struck Victim in the face while driving and told her to be quiet. Although the violence occurred after Wallace was already inside Victim's car and driving, Missouri recognizes that force after the taking can support a robbery charge if the force "flowed promptly and naturally from the taking . . . without any intervening event or substantial lapse of time." State v. Harris, 622 S.W.2d 742, 745 (Mo. App. W.D. 1981) (finding sufficient force for robbery when the defendant struggled outside the store with stolen clothes effectuating the escape). Here, physically striking Victim in the face in order to abscond with the car is sufficient force and flowed promptly and naturally from breaking into Victim's car for the purpose of second-degree robbery. See id.; cf. State v. Applewhite, 771 S.W.2d 865, 867, 868 (Mo. App. E.D. 1989) (finding sufficient force for second-degree robbery where the defendant

12

pushed a man out of the way in order to abscond with cigarettes from a store). The record contains sufficient evidence to support Wallace's second-degree robbery conviction.

Rather than include a meritless sufficiency-of-the-evidence claim unsupported by the record, appellate counsel made the strategic choice to focus Wallace's direct appeal on his competency to stand trial—the stronger claim with greater chance for success. See Tate, 461 S.W.3d at 23; Morse, 462 S.W.3d at 913. Appellate counsel's decision was reasonable strategy and thus we will not hold that decision to be ineffective assistance. See Davis, 486 S.W.3d at 906. Because Wallace's claim is clearly refuted by the record, the motion court did not clearly err in denying Wallace's motion without an evidentiary hearing. Rule 29.15(h); see DePriest, 510 S.W.3d at 342. Point Two is denied.

B.     Attempted Forcible Rape

Wallace next asserts that appellate counsel failed to challenge the sufficiency of the evidence of his "intent" as it relates to his conviction of attempted forcible rape. The police found Victim alone with her clothes torn off, naked, beaten, and semi-conscious in an alley. Specifically, Wallace contends that his forcible removal of Victim's clothing was insufficient evidence of a "substantial step" towards the commission of forcible rape. We disagree. See Wilder v. State, 301 S.W.3d 122, 130 (Mo. App. E.D. 2010) (finding that the forcible removal of the victim's clothing was a substantial step towards the commission of forcible rape); State v. Elliott, 987 S.W.2d 418, 422 (Mo. App. W.D. 1999) (same).

Attempted forcible rape is committed when a person attempts to have "sexual intercourse with another person by the use of forcible compulsion." Section 566.030 RSMo (Cum. Supp. 2007). A person may be guilty of an offense based on an attempt to commit that offense if, "with the purpose of committing the offense, [a person] does any act which is a substantial step towards the commission of the offense." Section 564.011. A "substantial step" is defined as

13

"conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense." Id. Missouri permits an assumption of intent to rape through circumstantial evidence. See State v. Gray, 923 S.W.2d 929, 934–35 (Mo. App. S.D. 1996). "The intent of the accused in an attempt case is rarely susceptible of direct proof; the circumstances of the case must be closely examined." State v. Moore, 432 S.W.3d 779, 782 (Mo. App. E.D. 2014).

To prove forcible rape, the State must prove the element of forcible compulsion. The State need not prove an element of serious physical injury. Elliott, 987 S.W.2d at 422. Further, attempted forcible rape requires proof that the defendant committed a substantial step towards forcibly raping the victim. Section 564.011. While the record does not explain why Wallace left Victim without completing the act of forcible rape, such evidence is not necessary to support the trial court's finding of attempted forcible rape. Instead, we may infer the requisite intent based on the surrounding circumstances. See Moore, 432 S.W.3d at 782. Wallace's removal of Victim's clothing was sufficient evidence, considering the totality of the circumstances,[4] to support a finding that Wallace completed a substantial step towards forcibly raping Victim. See Wilder, 301 S.W.3d at 130; Elliott, 987 S.W.2d at 422. Thus, the record before us contains sufficient evidence to establish Wallace's attempted forcible rape conviction.

Rather than include a meritless sufficiency-of-the-evidence claim unsupported by the record, appellate counsel strategically focused Wallace's direct appeal on his competency to stand trial. See Tate, 461 S.W.3d at 23; Morse, 462 S.W.3d at 913. Appellate counsel's decision

---

[4] Although not required to support the trial court's finding of attempted forcible rape, the totality of the evidence gives rise to an inference of Wallace's attempt to rape Victim. Wallace used force against Victim almost from the moment he entered her car. Wallace hit Victim repeatedly, forced Victim's head toward his groin, told her to suck his penis, dragged Victim back to the car when she escaped, followed Victim down the alley, and forcibly removed Victim's clothing. The trier of fact could reasonably infer that, by removing Victim's clothing and especially considering evidence of his prior aggressive conduct towards Victim, Wallace intended to forcibly rape Victim.

was reasonable strategy; thus, Wallace fails to prove appellate counsel was ineffective under the Strickland test. See Davis, 486 S.W.3d at 906. Because Wallace's claim is clearly refuted by the record, the motion court did not clearly err in denying Wallace's motion without an evidentiary hearing. Rule 29.15(h); see DePriest, 510 S.W.3d at 342. Point Three is denied.

## Conclusion

The judgment of the motion court is affirmed.

_____
KURT S. ODENWALD, Presiding Judge

Gary M. Gaertner, Jr., J., concurs.
Colleen Dolan, J., concurs.

15