

# In the Missouri Court of Appeals Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED101974 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Michael F. Stelzer |
| PHELTON JOHNSON, | ) | |
| | ) | |
| Appellant. | ) | FILED: January 12, 2016 |

## Introduction

Phelton Johnson ("Johnson") appeals the trial court's judgment entered following a jury trial. The jury convicted Johnson on five counts of second-degree statutory sodomy and one count of second-degree child molestation. In this appeal, Johnson challenges the sufficiency of the evidence supporting his conviction on Count II for second-degree statutory sodomy. Johnson further challenges the trial court's rulings admitting certain photographs into evidence and prohibiting him from cross-examining Victim regarding a prior rape.

Because the State did not present sufficient evidence that Johnson's hand touched Victim's genitals, the trial court erred in denying Johnson's motion for judgment of acquittal on Count II, the charge of second-degree statutory sodomy. Johnson did not preserve his objection to the admission of the photographs. Because we find no manifest injustice in the trial court's admission of the photographs into evidence, we decline to exercise plain-error review. Lastly,

Johnson did not comply with the written-motion requirement of the rape shield statute, Section 491.015.3.[1] Accordingly, evidence that Victim may have been a prior rape victim was inadmissible, and the trial court did not err in limiting cross-examination. We vacate Johnson's conviction and sentence as to Count II only. The remainder of the trial court's judgment and sentences are affirmed.

## Factual and Procedural History

Because Johnson disputes the sufficiency of the evidence for his conviction on Count II, we view the relevant evidence adduced at trial in the light most favorable to the verdict. In November of 2011, Johnson lived in the City of St. Louis with his daughters. Victim, who was fourteen years old, and Victim's friend wanted to make some money by braiding Johnson's daughters' hair and helping the daughters with their homework. Victim and her friend skipped school and walked to Johnson's home. At some point, Victim's friend went to the store with one of Johnson's daughters, while Victim stayed at Johnson's house. Johnson's other daughters were in the basement.

Johnson approached Victim on the couch and sat next to her. Johnson then kissed Victim and asked if Victim's boyfriend ever "ate [Victim] like this." Victim did not understand and she stated, "Excuse me." Johnson began to pull off Victim's pants with his hands. Victim tried to pull her pants back up, but Johnson succeeded in removing them. Victim testified that Johnson "kissed me from my mouth down to my stomach down to my private area." Johnson was kneeling on the floor, and Victim was sitting on the couch. Johnson performed oral sex on Victim. Victim was asked at trial, "where were his hands?" Victim replied, "On the floor. I'm not sure." Johnson then moved to Victim's feet, where he licked and sucked her toes. Johnson

---

[1] All statutory references are to RSMo (2000), unless otherwise noted.

also asked to keep Victim's underwear, but Victim refused. The encounter ended when Victim's friend returned home from the store and wiggled the doorknob.

Johnson and Victim had two additional sexual encounters over the following weeks. Because Johnson does not dispute the sufficiency of the evidence related to those encounters, we will not elaborate on those facts. Although the sexual encounters ended before Christmas of 2011, Johnson "kept calling and texting" Victim, causing her concern. In January of 2012, Johnson saw Victim and her friend walking to a bus stop and Johnson approached them. Johnson showed Victim a tattoo of Victim's name on Johnson's arm. Victim and her friend ran away from Johnson and went to a police station, where Victim reported her sexual encounters with Johnson. Police eventually arrested Johnson. The State charged Johnson with eight counts stemming from his contact with Victim. Count II of the complaint alleged second-degree statutory sodomy, in that "defendant touched [Victim] in a sexual way, the defendant, by touching [Victim's] genitals with defendant's hand, had deviate sexual intercourse" with Victim, who was less than seventeen years old. Johnson was more than twenty-one years old.

At trial, the State offered into evidence three photographs of Johnson's bar room at his house. The photographs were marked as Exhibits 5, 6, and 7. Johnson, through counsel, objected to these exhibits at trial "based on [the] previous motion." The "previous motion" to which Johnson referred was actually two oral motions in limine argued before evidence was presented.

In the first motion in limine, Johnson asserted that "one photograph" was inadmissible. This "one photograph", which was marked as Exhibit 6, showed Johnson's bar room wall covered with women's underwear and other personal items. A sign hanging on the wall was labeled "Romeo's dick," and the sign included a corresponding illustration. Victim knew

3

Johnson by the nickname "Romeo." Johnson stated, "And as far as the underwear being on the wall, there is [*sic*] two other photographs that show underwears on the wall. We are not contesting these." But Johnson argued that the "Romeo's dick" sign was not relevant. The State reasoned that the photograph was relevant because it identified the bar room as Johnson's and it corroborated Victim's testimony that Johnson asked for Victim's underwear. The trial court compromised by redacting everything other than the name "Romeo's" on the sign, and otherwise allowing the photograph to be admitted into evidence.

In the second motion in limine, Johnson asserted that another photograph, later marked as Exhibit 7, was inadmissible. Exhibit 7 showed the same wall as Exhibit 6. Because the photograph's angle was different, the right side of Exhibit 7 showed pornographic materials hanging on the wall. Counsel for Johnson argued, "I don't think it's relevant to our case, and I think it's obviously quite inflammatory if you look at it, and it's something that kind of—I guess just touches your sensibilities … I'd ask that if this photograph is going to be admitted that that part of it be redacted." The trial court ordered the redaction of the pornographic materials in the photograph and admitted the redacted photograph as Exhibit 7.

The photograph marked as Exhibit 5 depicted several pieces of women's underwear hanging on a wall in the same bar room. Johnson did not contest the admissibility of Exhibit 5 in either of his motions in limine.

At trial, Victim and Victim's mother testified how the sexual encounters hurt Victim. For example, Victim testified, "I don't trust nobody. I don't like going outside. I don't want to work. I don't like school no more. I don't want to play sports. I scrub my skin until it bleeds. I cut myself." Johnson sought to question Victim about a prior rape in which Johnson was not involved. Johnson maintained that Victim had previously been raped, and that incident was

4

relevant to her testimony that Johnson was the cause of Victim's emotional and mental state. Citing Missouri's rape shield statute, Section 491.015, the trial court prohibited Johnson from questioning Victim about the prior rape.

The jury convicted Johnson on five counts of second-degree statutory sodomy and one count of second-degree child molestation. The trial court denied Johnson's motion for new trial and sentenced Johnson to a total of 21 years in prison. This appeal follows.

## Points on Appeal

Johnson raises three points on appeal. First, Johnson argues the trial court erred in overruling his motion for judgment of acquittal because the evidence was insufficient to support his conviction of second-degree statutory sodomy (Count II). Specifically, Johnson asserts that the State failed to present evidence that Johnson touched Victim's genitals with his hand, a requirement for second-degree sodomy. Second, Johnson argues that the trial court abused its discretion in overruling his objection to Exhibits 5, 6, and 7. Johnson asserts that these photographic exhibits, which depicted women's underwear hanging on the wall of his bar room, were irrelevant and that the prejudice of the photos outweighed any probative value such photographs may have had. Third, Johnson argues the trial court abused its discretion in overruling his motion to cross-examine Victim about her prior rape. Specifically, Johnson asserts that evidence Victim had been previously raped was evidence encompassed within an exception to the Rape Shield Statute, which allows such evidence to show an alternative source of disease.

## Discussion

Points Two and Three of Johnson's appeal address all of the counts for which Johnson was convicted. Point One addresses only Count II, one count of statutory sodomy in the second degree. Accordingly, we will address Points Two and Three before addressing Point One.

5

## I.  Point Two—Admissibility of Exhibits 5, 6, and 7

To preserve an objection to evidence for appellate review, the objection at trial must be specific, and the point raised on appeal must be based on that same theory as raised at trial. State v. Knese, 985 S.W.2d 759, 766 (Mo. banc 1999). An appellant cannot broaden the scope of his objections beyond the grounds relied upon at trial. State v. Johnson, 207 S.W.3d 24, 43 (Mo. banc 2006). We may review unpreserved issues only for plain error. Id.

Johnson argues on appeal that Exhibits 5, 6, and 7 were irrelevant. Johnson asserts that photographs of the bar room's existence and the presence of women's underwear on the walls served only to inflame the passions and prejudices of the jury. The record shows that at trial, Johnson objected to the admission of Exhibits 5, 6, and 7 based upon his "previous motion." The "previous motion" to which Johnson referred was actually two pretrial motions in limine.

### A.  Exhibit 5

We note that Johnson did not object to Exhibit 5 in either of his pretrial motions in limine. Correspondingly, Johnson raised no objection to the introduction of Exhibit 5 at trial. Having made no objection at trial, Johnson did not allow the trial court to remedy any alleged error. See State v. Borden, 605 S.W.2d 88, 90 (Mo. banc 1980). Therefore, the lack of an objection precludes our consideration of Johnson's argument as preserved error with respect to Exhibit 5. State v. Morris, 585 S.W.2d 231, 234 (Mo. App. E.D. 1979).

### B.  Exhibits 6 and 7

Johnson argued during pretrial motions in limine that Exhibit 6 was unduly prejudicial and inadmissible because the photograph depicted a sign labeled "Romeo's dick." Johnson also argued that Exhibit 7 was unduly prejudicial because it depicted pornography hanging on Johnson's bar room wall. We note that the trial court *agreed* with Johnson on both of these points and redacted the word "dick" and the corresponding illustration in Exhibit 6, and also

6

redacted the objectionable pornography from Exhibit 7. The record shows that the trial court addressed and accommodated Johnson's concerns with regard to these two photographs. "If a party gets what he requests from the trial court, he should not be able to convict it of error, plain or otherwise, for complying with his request." State v. Mashek, 336 S.W.3d 478, 484 (Mo. App. S.D. 2011).

Johnson now argues on appeal that Exhibits 6 and 7 were unfairly prejudicial because the exhibits showed the existence of the bar room and underwear hanging on the wall. Johnson's appeal fails because he expressly declined to make this argument at trial. Johnson stated at pretrial motions, "And as far as the underwear being on the wall, there is [sic] two other photographs that show underwears [sic] on the wall. We are not contesting these."[2] Because Johnson's arguments on appeal do not rely on the same theories advanced at trial, Johnson has not preserved his objection to Exhibits 6 and 7.

Because Johnson did not object to Exhibit 5 and has not preserved his objections to Exhibits 6 and 7, we may review these points only for plain error. Johnson, 207 S.W.3d at 43. We find no manifest injustice or a miscarriage of justice upon review of the record. We will not convict the trial court of error, plain or otherwise, when it accommodated Johnson's complaints. See Mashek, 336 S.W.3d at 484. Therefore, we decline to review for plain error. See State v. White, 247 S.W.3d 557, 561 (Mo. App. E.D. 2007) (outlining plain-error review). Point Two is denied.

---

[2] We acknowledge the concept of affirmative waiver. When one party makes the statement "no objection," or apparently consents to the admission of evidence, this statement affirmatively waives appellate review and precludes plain-error review. See, e.g., State v. Woods, 357 S.W.3d 249, 255 (Mo. App. W.D. 2012). We need not determine whether Johnson's statement during pretrial motions consitututed an affirmative waiver because we nevertheless decline to exercise plain error review. See State v. Collins, 188 S.W.3d 69, 78 (Mo. App. E.D. 2006) (finding affirmative waiver and declining to review for plain error).

7

## II.    Point Three—Rape Shield Statute

Section 491.015, known as the rape shield statute, creates a presumption that evidence of a victim's prior sexual conduct is irrelevant to prosecutions for sex crimes. State v. Kelley, 83 S.W.3d 36, 39 (Mo. App. W.D. 2002). Specific instances of the complaining witness's prior sexual conduct are inadmissible, unless an exception to the rape shield statute applies. Section 491.015.1. One exception occurs where specific instances of sexual activity show an "alternative source or origin of semen, pregnancy or *disease*." Section 491.015.1(2) (emphasis added).

Johnson argues that evidence of Victim's prior rape provides an alternative source of the various emotional or mental symptoms that Victim described at trial. Victim's symptoms included distrust of others, dislike of activities she previously enjoyed, and self-destructive tendencies. The State argued at trial that Johnson's conduct caused those symptoms. Johnson contends that Victim's symptoms were indicative of some form of mental disease. Johnson reasons that evidence of Victim's prior rape, in which Johnson was not involved, provided an alternative source of Victim's mental disease. The parties have not provided and we are not aware of any Missouri authority interpreting "disease," as used in 491.015.1(2), to encompass *mental* disease. However, we need not address Johnson's substantive arguments because Johnson did not comply with Section 491.015.3.

Section 491.015.3 states in relevant part:

> If the defendant proposes to offer evidence of the sexual conduct of the complaining witness under this section, **he shall file with the court a written motion** accompanied by an offer of proof or make an offer of proof on the record outside the hearing of the jury. [Emphasis added.]

An appellant may not argue that the trial court erred in excluding evidence under the rape shield statute when the defense fails to follow the requirements of Section 491.015. See State v. Bellah, 745 S.W.2d 213, 217 (Mo. App. E.D. 1987). In Bellah, defense counsel sought to

8

question the victim about possible alternative sources of semen under Section 491.015.1(2). Id. The trial court prohibited such questioning of the victim, and the defendant argued on appeal that the trial court erred. Id. After noting the written-motion requirement in Section 491.015.3, this Court found that the offered evidence was inadmissible because a written motion had not been filed as required by statute. Id. (citing State v. Poe, 708 S.W.2d 723, 728 (Mo. App. S.D. 1986)).

This strict rule articulated in Bellah is consistent with the purpose of Section 491.015 to protect the victim. See State v. Smith, 157 S.W.3d 379, 382 (Mo. App. E.D. 2005). Section 491.015.3 protects the victim by ensuring that a careful procedure is followed before a defendant may question the victim in open court about prior sexual conduct. This mandatory procedure requires a written motion and an offer of proof. Section 491.015.3. Next, the trial court holds an in camera hearing to determine whether the proferred evidence should be admitted, and what limitations, if any, will accompany the admission of the evidence. Id. Finally, the record of the in camera hearing must be sealed from the general public. Id. This careful procedure is not followed without a written motion and an accompanying offer of proof. Id.

Our review of the record shows that Johnson made an oral motion to question Victim about a prior rape at trial. We find the record devoid of the required written motion to question Victim on this topic or an accompanying offer of proof. Because Johnson did not comply with the express requirements of Section 491.015.3, the trial court properly precluded his cross-examination of victim on the subject of any prior rape. Accordingly, Point Three is denied.

## III. Point One—Sufficiency of the Evidence (Count II)

Johnson was charged with multiple counts of second-degree statutory sodomy. In Count II, the State charged Johnson with second-degree statutory sodomy alleging that Johnson had deviate sexual intercourse with Victim by touching Victim's genitals with his hand. The State also alleged that Victim was less than seventeen years old at the time and that Johnson was

9

twenty-one years or older. This charge complied with Section 566.064.1. The only question on appeal is whether the State presented sufficient evidence allowing a jury to find that Johnson touched Victim's genitals with his hand.

A.    Standard of Review

To determine whether the State presented sufficient evidence to sustain a conviction, we consider each element of the crime. State v. Grim, 854 S.W.2d 403, 411 (Mo. banc 1993). We apply the same standard of review regardless of whether the State's case relies on direct evidence or circumstantial evidence. Id. at 405–08. We view the evidence in the light most favorable to the State and grant the State all reasonable inferences from the evidence. Id. at 411. Conversely, we disregard all contrary inferences unless the inferences are "such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them." Id. We will not supply missing evidence or give the State the benefit of unreasonable, speculative, or forced inferences. State v. Langdon, 110 S.W.3d 807, 811–12 (Mo. banc 2003). Viewing the evidence in this light, the issue becomes "whether a reasonable juror could find each of these elements beyond a reasonable doubt." Grim, 854 S.W.2d at 411.

B.    The State's evidence was insufficient.

"A person commits the crime of statutory sodomy in the second degree if being twenty-one years of age or older, he has deviate sexual intercourse with another person who is less than seventeen years of age." Section 566.064.1. Johnson's argument on appeal is that the State did not present sufficient evidence that Johnson had "deviate sexual intercourse" with Victim. "Deviate sexual intercourse" includes "any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person." Section 566.010(1) (Cum. Supp. 2008). In Count II, the State charged that Johnson's hand touched Victim's genitals.

10

"When a defendant challenges the sufficiency of the evidence to support a finding that sexual contact occurred, the issue is whether there is at least a reasonable inference that there was the touching of the genitals." State v. Greenlee, 327 S.W.3d 602, 619 (Mo. App. E.D. 2010). Johnson argues that Victim never testified that Johnson touched her genitals with his hand during this sexual encounter. When asked where Johnson's hands were during the alleged sexual encounter, Victim testified, "On the floor. I'm not sure." The State presented no affirmative evidence that Johnson touched Victim's genitals with his hand, and instead relies upon speculation that Johnson touched victim's genitals with his hand.

In State v. Simmons, the State charged a defendant with second-degree sodomy for allegedly forcing the victim's hand to touch the defendant's penis. 233 S.W.3d 235, 238 (Mo. App. E.D. 2007). The State presented no affirmative evidence that Victim actually touched the defendant's penis with her hand, and the State conceded the point in its brief. Id. at 239. Without any affirmative evidence of a touching, this Court held that the evidence was insufficient to support second-degree sodomy. Id. Similarly here, the record contains no affirmative evidence (relevant to Count II) that Johnson touched Victim's genitals with his hand.

The State argues that a jury reasonably could have inferred Johnson's hand touched Victim's genitals from the evidence. Viewed in the light most favorable to the State, the evidence shows that Johnson removed Victim's pants, leggings, and underwear with his hands. Victim testified that her and Johnson "were going back and forth for a moment" with her pants

and underwear. Johnson then performed oral sex on Victim.[3] The State contends that Johnson could have touched Victim's genitals when he was taking off her underwear.

The State is correct that direct evidence is *not* always necessary to prove the facts required to support a conviction because findings of fact may be premised upon reasonable inferences. See State v. Wilkins, 872 S.W.2d 142, 145 (Mo. App. S.D. 1994). In Wilkins, the defendant contested the sufficiency of the evidence that his hands or penis touched the victim's genitals or breasts. Id. Evidence showed that the defendant was lying flat on Victim; the defendant's groin was pressed onto victim. Id. When asked if the defendant put his hand in her vaginal area, Victim testified that she felt pain. Id. Later, the victim testified that she did not "know if it was his hand or his penis." Id. This additional evidence was sufficient —albeit marginally so—for a juror to reasonably infer that the defendant touched the victim's genitals with *either* his hand or penis. Id. at 145–46.

Wilkins is distinguishable from the facts here because of the manner in which the crimes were charged. The State in Wilkins only needed to prove that *either* the defendant's hand *or* his penis touched Victim's genitals. 872 S.W.2d at 145. When supported with additional evidence that Victim felt pain in her genital area, and that both Victim's hand and penis were in close proximity to her genital area, a jury could have reasonably concluded that *either* Defendant's hand or penis caused Victim's pain. Id. The Court in Wilkins emphasized that the evidence was only marginally sufficient. Id. at 146. The evidence is far weaker here. Here, the State could prove the crime as charged in Count II only by showing Johnson's *hand* touched Victim's genitals. Victim testified that she did not know where Johnson's hands were during the oral sex.

_____

[3] We note that Johnson's mouth touching Victim's genitals satisfies the definition of "deviate sexual intercourse." However, this conduct was charged separately as second-degree sodomy for which Johnson was convicted in Count I.

12

The only additional evidence relevant to Johnson's hands was the testimony that Johnson removed Victim's pants and underwear. Unlike the facts in Wilkins, Victim did not testify as to pressure, pain, or touch of her genital areas while Johnson removed her clothing.

Close proximity between a defendant's body part and a victim's body part is insufficient to reasonably infer actual contact without additional evidence. For example, in State v. Molkenbur a trial court refused to give an instruction for third-degree sexual assault, which required the State to prove "sexual contact." 723 S.W.2d 894, 896–97 (Mo. App. S.D. 1987). "Sexual contact" meant touching the genitals or anus of any person, or the breast of a female, either directly or through clothing, for the purpose of arousing or gratifying sexual desire. Id. at 897. The evidence adduced at trial showed that the defendant put his hand inside the woman's nightgown, but the evidence did not indicate what, if anything, the defendant touched. Id. This evidence was held insufficient to reasonably infer contact between the defendant's hands and the genitals, anus, or breasts of the victim. Id.

In State v. Ray, the victim never specifically testified that the defendant's penis touched her anus—as was required for the charged crime. 407 S.W.3d 162, 167 (Mo. App. E.D. 2013). The Court held the victim's testimony that the defendant's "weenie" touched her "butt," standing alone, was insufficient to infer touching of her "anus," despite the close proximity of those body parts. Id. Victim never specifically stated that the defendant's penis touched her anus, which was anatomically distinct from her "butt." Id. However, additional evidence established that Victim, who was only ten years old during her testimony, indicated that defendant's "weenie" was *inside* of her "booty" and that it "rocked." Id. at 168. Given the Victim's age and vocabulary, the court found this additional evidence sufficient for a trier of fact to reasonably infer that the defendant's penis touched the victim's anus. Id.

13

Similar to Molkenbur, where the defendant reached inside the victim's robe, the jury heard evidence that Johnson pulled down Victim's pants and underwear. While this evidence suggests that Johnson's hands were in close proximity to Victim's genitals, the evidence fails to establish *what* part of victim's body Johnson touched. Inferring that Johnson touched Victim's genitals when pulling down her pants and underwear is forced at best. No additional evidence suggested that Johnson's hands actually touched Victim's genitals. Victim was also fourteen years old during the alleged incident and seventeen years old during her testimony—a high school senior. Unlike the very young victim in Ray, the State cannot rely on Victim's youth and unfamiliarity with basic anatomy to justify vague testimony about whether Johnson's hands touched her genitals. Without additional evidence, a juror could only speculate about whether Johnson's hand touched Victim's genitals. Such speculation is not a reasonable inference. See Langdon, 110 S.W.3d at 811–12.

Johnson testified that this sexual encounter with Victim did not happen. Instead, Johnson claimed that he only kissed Victim and sucked her toes. Since the jury convicted Johnson, the State asserts that the jury did not believe his testimony. The State argues that Johnson's dishonesty can be treated as affirmative evidence that his hands touched Victim's genitals, citing State v. Woods, 284 S.W.3d 630, 640–41 (Mo. App. W.D. 2009). We reject this bootstrapping argument. Unlike the facts in Woods, there is simply no evidence, physical or otherwise, to support a reasonable inference that Johnson's hand touched Victim's genitals. Even though the jury disbelieved Johnson and found that some sexual activity occurred between himself and Victim, a finding that Johnson's *hand* touched Victim's *genitals* is rank speculation without some additional evidence of *what* Johnson touched.

14

Given the totality of the evidence presented at trial, the jury could only speculate that Johnson's hands touched Victim's genitals. We will not give the State the benefit of such speculation and forced inferences. Langdon, 110 S.W.3d at 811–12. Because the jury could not reasonably infer from the evidence that Johnson's hand touched Victim's genitals, the evidence was insufficient to support Johnson's conviction on Count II. The trial court therefore erred in denying Johnson's motion for judgment of acquittal. Accordingly, Point One is granted.

## Conclusion

Johnson's conviction for second-degree sodomy on Count II is reversed, and the corresponding sentence is vacated. The judgment and sentences of the trial court are affirmed in all other respects.

KURT S. ODENWALD, Judge

Sherri B. Sullivan, P.J., concurs.
Lisa S. Van Amburg, C.J., concurs.

15