

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| PERVIS MCALLISTER, | ) | No. ED109569 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Honorable David L. Vincent III |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent. | ) | FILED: March 15, 2022 |

## Introduction

Pervis McAllister ("McAllister") appeals from the motion court's judgment denying his Rule 29.15[1] motion for post-conviction relief following jury trial convictions for first-degree child molestation, first-degree statutory sodomy, and first-degree statutory rape. McAllister raises five points on appeal. Points One, Two, and Three contend appellate counsel failed to challenge the sufficiency of the evidence for statutory sodomy. Points Four and Five assert trial counsel and appellate counsel failed to raise instructional error subjecting McAllister to double jeopardy on the charges of child molestation and statutory rape. The record supports McAllister's claim that the State failed to present sufficient evidence of hand-to-genital conduct to sustain McAllister's conviction on first-degree statutory sodomy on Count IV and that appellate counsel did not raise the issue of sufficiency on appeal. The motion court clearly erred

---

[1] All Rule references are to Mo. R. Crim. P. (2016).

in determining without an evidentiary hearing that McAllister failed to demonstrate appellate counsel was ineffective for not raising that issue. We therefore grant Point One. Because the State presented trial testimony that McAllister's sexual abuse of C.S. continued until 2002, the record contains sufficient evidence showing McAllister committed statutory sodomy against C.S. within the alleged timeframe. The motion court did not err in finding appellate counsel was not ineffective for failing to challenge the sufficiency of the evidence on Counts IX and X, and we deny Points Two and Three. Because the charges of first-degree child molestation and first-degree statutory rape each contain an element the other does not, neither trial counsel nor appellate counsel were ineffective for failing to raise a meritless claim of double jeopardy. The motion court did not err in denying McAllister's amended motion on those grounds, and we deny Points Four and Five. Accordingly, we affirm the motion court's judgment on Points Two, Three, Four, and Five, and we reverse on Point One. We reverse and remand for an evidentiary hearing on McAllister's conviction and sentence as to Count IV only. The remainder of the motion court's judgment is affirmed.

## Factual and Procedural History

The criminal convictions in this case stem from sexual abuse committed against three victims. This appeal concerns the evidence from two of the victims, J.W. and C.S., adult sisters who testified in a jury trial that McAllister sexually assaulted them when they were children under the age of twelve living in the same house with McAllister from 1999 to 2002. In the light most favorable to conviction, the following facts relevant to appeal were adduced at trial in 2015.

McAllister moved into the house when he was dating the mother of J.W. and C.S. J.W. was nine years old, and C.S. was seven years old. On the day they met, McAllister sexually assaulted J.W. and continued doing so regularly until he moved out in 2002. McAllister also sexually assaulted C.S. during the same timeframe.

2

J.W. was twenty-four years old at the time of trial and testified that McAllister began sexually abusing her in 1999 when he moved into the house when she was nine years old. J.W. also testified that C.S. was seven years old when McAllister moved in. J.W. testified that McAllister repeatedly sexually abused her in the house, the car, and another house. J.W. described how McAllister would hold his penis against her vagina for a set amount of time, which he would count aloud, sometimes during which he would penetrate her labia or vagina. J.W. testified that McAllister would give her money in exchange for sex. The State asked J.W. whether "[a]t any point did he use his hand to touch you?" J.W. answered, "He only used his hand to rub on my chest and my butt. Other than that, it was mostly his penis that was touching me." J.W. also testified that McAllister ejaculated into his hand "a couple times." J.W. testified that McAllister continued sexually abusing her until he moved out of the house in 2002.

C.S. was twenty-two years old at the time of trial and testified that McAllister began sexually assaulting her when she was seven years old and that he continued doing so until he moved out of the house. C.S. testified that McAllister repeatedly touched her genitals, specifically rubbing her vagina with his hand and putting her hand down his pants to feel his erect penis, stating these actions occurred "often" and "way more than once."

McAllister testified in his own defense. He denied having any sexual contact with J.W. or C.S. He testified he had a good relationship with them and the other children who lived in the house until he moved out. McAllister testified he moved out of the house on New Year's Eve in 2000.

The jury instruction for Count IV instructed the jury to find McAllister guilty of first-degree statutory sodomy if he knowingly touched the vagina of J.W. with his hand. On Counts IX and X the jury was instructed to find McAllister guilty of first-degree statutory sodomy if,

3

between August 28, 2000 and January 1, 2002, he touched the vagina of C.S. with his hand and made C.S. touch his penis with her hand, respectively. The trial court also instructed the jury on Count VIII for first-degree child molestation for genital-to-genital contact of J.W. and three counts of statutory rape of J.W. in Counts V, VI, and VII.

The jury found McAllister guilty of three counts of first-degree child molestation (Counts II, III, and VIII), three counts of first-degree statutory sodomy (Counts IV, IX, and X), and one count of first-degree statutory rape (Count V). The trial court dismissed the charge of sexual misconduct at the close of the State's evidence (Count I), and the jury acquitted McAllister of two counts of first-degree statutory rape (Counts VI and VII). The trial court sentenced McAllister to twenty-five years on each count of first-degree statutory sodomy and the count of statutory rape, fifteen years on the counts for child molestation against the third victim, and seven years on the count of child molestation against J.W., with all sentences to run concurrently.

This Court affirmed McAllister's convictions in State v. McAllister, 491 S.W.3d 681 (Mo. App. E.D. 2016). McAllister then sought post-conviction relief.[2] In his Rule 29.15 amended motion, McAllister raised numerous grounds for ineffective assistance of trial counsel and appellate counsel, including claims challenging sufficiency of the evidence as well as double jeopardy. On remand, the motion court issued its second amended judgment denying McAllister's motion for post-conviction relief without an evidentiary hearing. This appeal follows.

---

[2] This Court remanded McAllister's Rule 29.15 appeal because the motion court's judgment did not address all of the claims in the amended motion. McAllister v. State, 561 S.W.3d 492 (Mo. App. E.D. 2018). Thereafter, this Court remanded McAllister's second Rule 29.15 appeal because the motion court failed to conduct an abandonment inquiry. McAllister v. State, 600 S.W.3d 300 (Mo. App. E.D. 2020).

4

## Points on Appeal

McAllister raises five points on appeal. Point One argues the motion court clearly erred in denying his Rule 29.15 motion for post-conviction relief without an evidentiary hearing because appellate counsel was ineffective for failing to challenge the sufficiency of the evidence for first-degree sodomy on Count IV. More specifically, McAllister maintains there was insufficient evidence to support a finding either that McAllister touched J.W.'s genitals with his hand or that he did so during the time period charged by the State. Point Two contends appellate counsel was ineffective for failing to assert that insufficient evidence supported finding on Count IX that McAllister touched C.S.'s genitals with his hand during the time period charged by the State. Point Three maintains appellate counsel was ineffective for failing to assert that insufficient evidence supported a finding on Count X that McAllister touched C.S.'s hand with his genitals during the relevant time period. Point Four claims the motion court clearly erred in denying his Rule 29.15 motion for post-conviction relief because trial counsel was ineffective for failing to object to the verdict director for Count VIII, first-degree child molestation, because the verdict director improperly subjected McAllister to double jeopardy for the same evidence and conduct as for first-degree statutory rape in Counts V and VI, which also necessarily involved genital-to-genital contact as part of sexual intercourse. Point Five posits that appellate counsel correspondingly was ineffective for failing to raise on appeal that the verdict director for Count VIII subjected McAllister to double jeopardy.

## Standard of Review

Our review of a motion court's denial of post-conviction relief is limited to determining whether the findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k); Shockley v. State, 579 S.W.3d 881, 892 (Mo. banc 2019). "A judgment is clearly erroneous when, in light of the entire record, the court is left with the definite and firm impression that a

5

mistake has been made." Shockley, 579 S.W.3d at 892 (internal quotation omitted). We presume the motion court's findings are correct and defer to the motion court's determinations as to the credibility of witnesses. Id. (internal citations omitted).

A movant is not guaranteed an evidentiary hearing. Rule 29.15(h). A motion court is not required to conduct an evidentiary hearing if "the motion and the files and records of the case conclusively show that the movant is entitled to no relief[.]" Smith v. State, 467 S.W.3d 303, 306–07 (Mo. App. S.D. 2015) (quoting Rule 29.15(h)).

Discussion

**The Standard for Ineffective Assistance of Counsel**

McAllister's Rule 29.15 amended motion raises claims of ineffective assistance of both trial and appellate counsel. To prevail on a claim for ineffective assistance of counsel, a movant must show by a preponderance of the evidence both that (1) "counsel failed to exercise the level of skill and diligence reasonably competent [] counsel would in a similar situation" and (2) "[the movant] was prejudiced by that failure." Shockley, 579 S.W.3d at 892 (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). "The standard for reviewing a claim of ineffective assistance of appellate counsel is essentially the same as that used in a claim against trial counsel." Tate v. State, 461 S.W.3d 15, 22 (Mo. App. E.D. 2015) (citing Mallett v. State, 769 S.W.2d 77, 83 (Mo. banc 1989)); Smith, 467 S.W.3d at 306.

Under the performance prong, "[a] movant must overcome the strong presumption [that] counsel's conduct was reasonable and effective." McIntosh v. State, 413 S.W.3d 320, 324 (Mo. banc 2013) (internal citation omitted). "To overcome this presumption, a movant must identify 'specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance.'" Id. (citing Zink v. State, 278 S.W.3d 170, 176 (Mo. banc 2009)). A movant establishes deficient performance of appellate counsel by showing

6

appellate counsel "failed to raise a claim of error that was so obvious that a competent and effective lawyer would have recognized and asserted it." Shockley, 579 S.W.3d at 919 (internal quotation omitted); Hogan v. State, 631 S.W.3d 564, 570 (Mo. App. W.D. 2021) (citing Meiners v. State, 540 S.W.3d 832, 836 (Mo. banc 2018)). Appellate counsel is granted considerable professional leeway in deciding which issues to raise on appeal. See Tate, 461 S.W.3d at 22 (quoting Strickland, 466 U.S. at 689) (recognizing "a strong presumption that appellate counsel's conduct fell within the 'wide range of reasonable professional assistance'"). "A decision made by counsel based on reasonable legal strategy is virtually unchallengeable; rarely will a strategic decision of counsel be declared so unsound as to constitute ineffective assistance of counsel." Id. (internal citations omitted).

Under the prejudice prong, a movant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Shockley, 579 S.W.3d at 892 (internal quotation omitted). A movant "must prove, if [appellate] counsel had raised the claims, there is a reasonable probability the outcome of the appeal would have been different." Id. at 919 (internal quotation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Hays v. State, 360 S.W.3d 304, 309 (Mo. App. W.D. 2012) (quoting Strickland, 466 U.S. at 694).

If a movant fails to satisfy either the performance or prejudice prong of the standard, we need not consider the other. Hogan, 631 S.W.3d at 570 (internal quotation omitted); see also Zink, 278 S.W.3d at 175.

**Points One, Two, and Three—Sufficiency of the Evidence**

A.      Point One—Insufficient Evidence of Hand-to-Genital Contact

Point One challenges appellate counsel's failure to challenge the sufficiency of the evidence for first-degree statutory sodomy on Count IV. In particular, McAllister posits

7

insufficient evidence supported finding either that McAllister touched J.W.'s genitals with his hand or that he did so during the relevant statutory time period. McAllister maintains that appellate counsel's failure to raise this issue on direct appeal constitutes ineffective assistance and that post-conviction relief under Rule 29.15 is warranted.

We first address McAllister's contention that appellate counsel was ineffective for not disputing whether the trial record contained sufficient evidence to find McAllister touched J.W.'s genitals with his hand to sustain his conviction on first-degree sodomy in Count IV.

Although appellate counsel is granted considerable professional leeway in deciding which issues to raise on appeal, a movant may establish deficient performance by showing that appellate counsel failed to raise a claim of error that was so obvious that a competent and effective attorney would have raised it. See Tate, 461 S.W.3d at 22 (internal citations omitted); see also Shockley, 579 S.W.3d at 919. For sufficiency-of-the-evidence claims, a movant may demonstrate deficient performance of appellate counsel to warrant an evidentiary hearing and post-conviction relief where an unraised sufficiency claim is shown to have been meritorious. See Wallace v. State, 573 S.W.3d 136, 146 (Mo. App. E.D. 2019) (internal citations omitted); see also Hounihan v. State, 592 S.W.3d 343, 349 (Mo. banc 2019).

"To determine whether the State presented sufficient evidence to sustain a conviction, we consider each element of the crime." State v. Johnson, 479 S.W.3d 762, 768 (Mo. App. E.D. 2016) (citing State v. Grim, 854 S.W.2d 403, 411 (Mo. banc 1993)); State v. Peeples, 288 S.W.3d 767, 770 (Mo. App. E.D. 2009) (internal quotation omitted). When a movant challenges the sufficiency of the evidence for conviction, our review is limited to "determining whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." Schallon v. State, 435 S.W.3d 120, 124–25 (Mo. App. E.D. 2014)

8

(citing Grim, 854 S.W.2d at 405). We do not reweigh the evidence but instead "accept as true all evidence favorable to the State, including all favorable inferences drawn from the evidence, and we disregard all evidence and inferences to the contrary." Id. However, "[w]e will not supply missing evidence or give the State the benefit of unreasonable, speculative, or forced inferences." Johnson, 479 S.W.3d at 768 (citing State v. Langdon, 110 S.W.3d 807, 811–12 (Mo. banc 2003)). If the evidence is found insufficient on any element of the convicted offense, a movant successfully demonstrates deficient performance where appellate counsel failed to challenge sufficiency on direct appeal, and post-conviction relief is warranted. See Hounihan, 592 S.W.3d at 349; Schallon, 435 S.W.3d at 125.

Here, the jury convicted McAllister on Count IV for the offense of statutory sodomy in the first degree. "A person commits the crime of statutory sodomy in the first degree if he has deviate sexual intercourse with another person who is less than fourteen years old." Section 566.062.1.[3] Deviate sexual intercourse is defined as

> any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person[.]

Section 566.010(1).

The charge of statutory sodomy set forth in Count IV is premised upon alleged hand-to-genital contact between McAllister and J.W. The required element of deviate sexual intercourse is the focus of McAllister's challenge. McAllister maintains the record lacks sufficient evidence to support the jury's finding that he touched J.W.'s vagina with his hand as charged by the State. "When a defendant challenges the sufficiency of the evidence to support a finding that sexual contact occurred, the issue is whether there is at least a reasonable inference that there was the

---

[3] All Section references are to RSMo (2000), unless otherwise indicated.

touching of the genitals." Johnson, 479 S.W.3d at 768 (quoting State v. Greenlee, 327 S.W.3d 602, 619 (Mo. App. E.D. 2010)).

In Johnson, when asked where the defendant's hands were during the alleged sexual encounter, the victim testified that his hands were "[o]n the floor. I'm not sure." Id. The evidence also showed that the defendant removed the victim's pants and underwear with his hands. Id. at 769. The victim testified that she and the defendant were "going back and forth for a moment" with her pants and underwear before the defendant performed oral sex on her. Id. The State contended that it was reasonable to infer that the defendant touched the victim's genitals with his hand when he was removing her underwear. Id. We found that inference to be speculative and held the record lacked affirmative evidence of the requisite touching of the victim's genitals with defendant's hand to support conviction on the charge of second-degree sodomy. Id. at 768–70. In Johnson, on the count at issue, the State specifically charged that the defendant's hand touched the victim's genitals. The victim testified that she did not know where the defendant's hands were during the oral sex. The record contained no additional testimony or other circumstantial evidence supporting a reasonable inference of hand-to-genital contact, such as pressure, pain, or touch of her genital areas while he removed her clothing. Id. at 769 (citing State v. Wilkins, 872 S.W.2d 142, 145–46 (Mo. App. S.D. 1994)). We also firmly rejected the State's suggestion that the jury's determination that the defendant's testimony was otherwise not credible could be treated as affirmative evidence of hand-to-genital contact. Id. at 770.

Critically, viewing the trial testimony in the light most favorable to the State, as in Johnson, the record lacks any affirmative evidence that McAllister touched J.W.'s genitals with his hand. See id. at 768. J.W., age twenty-four at the time of trial, testified that McAllister began sexually abusing her when he moved into the house when she was nine years old in 1999

10

continuing until he moved out in 2002. J.W. testified to a repeated pattern of abuse taking place in the house, the car, or another house in which McAllister would hold his penis against her vagina for a set amount of time that he would count aloud, sometimes during which he would penetrate her labia or vagina, and that he would give her money in exchange for sex. The State addressed the incidents of genital-to-genital contact charging McAllister with one count of first-degree child molestation for genital-to-genital contact and three counts of first-degree statutory rape. For the allegation that McAllister knowingly touched J.W.'s vagina with his hand, the State charged McAllister with first-degree statutory sodomy. It is only the count of statutory sodomy alleged in Count IV at issue in this point.

During trial, the only evidence the State adduced regarding the position or placement of McAllister's hands was asking J.W. whether "[a]t any point did he use his hand to touch you?" J.W. answered, "He only used his hand to rub on my chest and my butt. Other than that, it was mostly his penis that was touching me." The State suggests that J.W.'s statement that "it was mostly his penis that was touching me" supports a reasonable inference that at other times, McAllister's hands could have been touching J.W.'s genitals, such that the requisite hand-to-genital contact occurred. The State maintains that J.W. testified that McAllister sexually assaulted her several times a day for three years, and suggests therefrom that the jury reasonably could conclude that McAllister *at some point* committed an act involving his hand and J.W.'s genitals to support a claim of deviate sexual intercourse under Count IV. We are not persuaded. The State's argument strains credulity and requires a speculative, forced inference that we cannot and will not supply. See id. at 768 (citing Langdon, 110 S.W.3d at 811–12).

The State chose to charge McAllister with first-degree statutory sodomy specifically alleging hand-to-genital contact. The State bears the burden to prove each element of that

11

offense.  See id. (citing Grim, 854 S.W.2d at 411); Peeples, 288 S.W.3d at 770.  With regard to the required element of hand-to-genital contact, J.W. specifically denied that McAllister touched her vagina with his hand.  The State did not ask J.W. any further questions about the location of McAllister's hands during his sexual encounters with J.W.  The State did not introduce any evidence as to the placement of McAllister's hands during his sexual encounters with J.W.  Instead, the State now asks us to sanction a rank, speculative inference that at some point McAllister's hands contacted J.W.'s vagina despite a complete lack of evidence to such in the record.  See Johnson, 479 S.W.3d at 768.  In closing argument on Count IV, the State argued that the contextual details of J.W.'s testimony that McAllister made her have sex with him in exchange for field-trip money supported a finding that McAllister touched her vagina with his hand.  Neither this testimony nor any other evidence in the record persuades us that the State has identified sufficient evidence supporting the required finding of hand-to-genital contact.

We acknowledge that circumstantial evidence may support a finding of sexual contact. But the limitations on circumstantial evidence is that any inferences drawn therefrom must be reasonable.  See State v. West, 21 S.W.3d 59, 62–63 (Mo. App. W.D. 2000) (internal citations omitted) (noting "[r]easonable inferences may be drawn from direct and circumstantial evidence . . . [h]owever, the inferences must be logical, reasonable and drawn from established fact"). Similar to Johnson, the record before us contains no evidence placing McAllister's hand on or in J.W.'s vagina.  The record contains no evidence such as descriptions of pressure, pain, preparation for sexual intercourse, underwear removal, or other contextual clues that would allow a reasonable inference of statutory sodomy.  See id. at 769 (citing Wilkins, 872 S.W.2d at 145–46).  The only other testimony J.W. provided on the subject of McAllister's hands is that while he mostly touched her genitals with his penis, and other times her "chest" and "butt," he

12

also ejaculated into his hand "a couple times." Again, this testimony falls short of leading to a reasonable inference that the State met its burden to prove beyond a reasonable doubt that McAllister touched J.W.'s vagina with his hand. We cannot uphold a conviction on appeal where the charged misconduct requires evidence of hand-to-genital contact that is absent in the record. See id. (citing Greenlee, 327 S.W.3d at 619).

The State did not sustain its burden of adducing sufficient evidence from which a reasonable juror might have found McAllister guilty of the charged offense in Count IV. See Johnson, 479 S.W.3d at 770; Schallon, 435 S.W.3d at 124–25 (citing Grim, 854 S.W.2d at 405). Therefore, McAllister has demonstrated a meritorious claim challenging the sufficiency of the evidence of hand-to-genital contact on Count IV that is not plainly refuted by the record. The record supports the argument that this claim of error was "so obvious that a competent and effective lawyer would have recognized and asserted it." See Shockley, 579 S.W.3d at 919 (internal quotation omitted); Hogan, 631 S.W.3d at 570 (citing Meiners, 540 S.W.3d at 836). Appellate counsel has a duty to identify and raise such claims of error. See Shockley, 579 S.W.3d at 919. Here, appellate counsel's failure to challenge the sufficiency of evidence on the charge of statutory sodomy calls into question the reasonableness of appellate counsel's strategy and corresponding effectiveness of appellate counsel's representation of McAllister in his direct appeal. See Hounihan, 592 S.W.3d at 349; see also Seals v. State, 551 S.W.3d 653, 660 (Mo. App. S.D. 2018) (internal quotation omitted) (noting "the relevant question for the motion court is not whether counsel's choices were strategic, but whether they were reasonable"). Thus, McAllister has demonstrated the need for an evidentiary hearing as to the deficient performance of appellate counsel for failure to raise the obvious and clear sufficiency claim on appeal. See Shockley, 579 S.W.3d at 919 (internal quotation omitted); Tate, 461 S.W.3d at 22 (quoting

13

Reuscher v. State, 887 S.W.2d 588, 591 (Mo. banc 1994)); Hogan, 631 S.W.3d at 570 (citing Meiners, 540 S.W.3d at 836). Further, because the sufficiency claim has been shown to have merit, McAllister has pleaded the requisite prejudice flowing from appellate counsel's deficient performance in that had appellate counsel raised the sufficiency claim, "there is a reasonable probability that the outcome of the appeal would have been different." See Shockley, 579 S.W.3d at 919 (internal quotation omitted). Consequently, because the claimed error on Count IV created a reasonable probability, not conclusively refuted by the record, that raising the sufficiency error may have changed the outcome of the case, the motion court clearly erred in denying McAllister's claim for post-conviction relief without an evidentiary hearing. See Rule 29.15(k); Hogan, 631 S.W.3d at 570 (internal citation omitted); Schallon, 435 S.W.3d at 124–25; see also Tate, 461 S.W.3d at 22 (internal citation omitted). We therefore reverse and remand for the motion court to grant an evidentiary hearing on this claim and continue proceedings for post-conviction relief consistent with this opinion. See Shockley, 579 S.W.3d at 892 (internal citation omitted). Point One is granted.

B.     Points Two and Three—Sufficient Evidence of the Timeline of the Offenses Charged in Counts IX and X

We next analyze McAllister's contention that appellate counsel was ineffective for failing to challenge whether there was sufficient evidence on Counts IX and X that the proscribed hand-to-genital contact against C.S. occurred within the timeframe alleged by the State in the charging documents. Specifically, McAllister correctly notes that hand-to-genital contact between the victim and perpetrator did not constitute deviate sexual intercourse until 2000 when the legislature amended the statute to expand the definition of deviate sexual intercourse to include hand-to-genital contact. See Section 566.010, RSMo (1994), RSMo (2000). McAllister reasons that if the evidence of his hand-to-genital contact with C.S. proved that the conduct occurred

14

only before the effective date of the statutory amendment—and not between August 28, 2000 and January 1, 2002 as charged in the jury instructions—then appellate counsel was ineffective for failing to raise on appeal that the evidence was insufficient to sustain his convictions on those counts.

"An appellate attorney does not have to raise every preserved issue." Weinert v. State, 593 S.W.3d 666, 671 (Mo. App. E.D. 2020) (internal citation omitted); see Tate, 461 S.W.3d at 22 (internal citation omitted) ("[A]ppellate counsel has no duty to raise every non-frivolous claim on appeal."). It is reasonable strategy for appellate counsel to refrain from bringing a sufficiency claim that is refuted by the record. Wallace, 573 S.W.3d at 146 (internal citations omitted). Further, appellate counsel will not be held ineffective for failing to raise a meritless claim. Tisius v. State, 519 S.W.3d 413, 432 (Mo. banc 2017).

"When faced with a challenge to the sufficiency of the evidence, we accept as true all evidence favorable to the State, including all favorable inferences drawn from the evidence, and we disregard all evidence and inferences to the contrary." Schallon, 435 S.W.3d at 124–25 (citing Grim, 854 S.W.2d at 405). "We limit our review to determining whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." Id. at 125. "As the trier of fact, the jury is the sole arbiter of witness credibility, and it is free to believe or disbelieve all, part, or none of any witness's testimony." State v. Armstrong, 560 S.W.3d 563, 574 (Mo. App. E.D. 2018) (internal citation omitted). Where the evidence was sufficient to support the movant's convictions, appellate counsel will not be deemed ineffective for failing to challenge the sufficiency of the evidence on direct appeal on those counts. Schallon, 435 S.W.3d at 125.

15

The general rule is that "time is not of the essence in a statutory sodomy case." State v. Cleary, 397 S.W.3d 545, 548 (Mo. App. S.D. 2013) (quoting State v. Celis-Garcia, 344 S.W.3d 150, 154 n.4 (Mo. banc 2011)). While "time is not an essential element of sex offenses . . . [the] general rule sometimes yields to case-specific concerns, including statutes of limitations, alibi, notice to the defendant, verdict unanimity, or double jeopardy." Id. (internal quotation and citations omitted). Here, McAllister maintains that hand-to-genital contact did not constitute statutory sodomy until the 2000 statutory amendment took effect on August 28, 2000, and that the jury instructions on Counts IX and X charged that the hand-to-genital contact occurred after that date. We therefore consider whether sufficient evidence in the record at trial supports a finding that McAllister committed the charged conduct during the alleged timeframe, and not only before August 28, 2000.

In Schallon, the movant noted the same statutory amendment at issue here: the inclusion of hand-to-genital conduct in the definition of deviate sexual intercourse in the context of statutory sodomy. 435 S.W.3d at 124. The State charged the movant for offenses under the pre-amended statute, which the movant argued did not include hand-to-genital contact that did not result in penetration, thus there was insufficient evidence for twelve counts of second-degree statutory sodomy. Id. This Court found sufficient evidence in the record to support the convictions under the pre-amended statute based on the victim's testimony that the movant penetrated her vagina with his fingers, that she recalled waking at night to find the movant's fingers already in her vagina, the defendant's admission that at one point he put his finger inside the victim's vagina, and the testimony that the victim was abused on a daily basis from the time she was eight years old until she left the home at age sixteen. Id. at 125. In finding appellate counsel was not ineffective for failing to challenge the sufficiency of the evidence, this Court

16

considered the expansive timeline across which the conduct was alleged to occur and how "the movant was convicted of a total of [forty-five] counts involving six different sexual offenses committed over an eight-year period, during which time some of the relevant statutes changed multiple times." Id.

Here, C.S., who was twenty-two years old at the time of trial, testified that the unlawful hand-to-genital contact began in 1999 when she was seven years old and continued until McAllister moved out of the house. C.S. testified that McAllister repeatedly touched her inappropriately, including rubbing her vagina with his hand and putting her hand down his pants to feel his erect penis, stating these actions occurred "often" and "way more than once." C.S. stated that the conduct "lasted as long as he lived there." Although C.S. was unclear about the precise date that McAllister moved out of the house, and McAllister testified that he moved out on New Year's Eve in 2000, the jury heard evidence from J.W. that McAllister lived with the family in the house from 1999 until 2002, which overlaps with the timeline set forth in the jury instructions. See State v. Williams, 313 S.W.3d 656, 660 (Mo. banc 2010) (internal quotation omitted) (noting it is the jury's duty to determine witness credibility and resolve conflicting testimony); see also Armstrong, 560 S.W.3d at 575 (internal quotation omitted) (noting "it is the jury's responsibility to assess the weight and credibility of the witnesses"). Specifically, J.W. testified that C.S. was seven years old when McAllister moved in, and he moved out when J.W. was eleven or twelve years old in the sixth grade in 2002.

The record contains evidence that McAllister engaged in repeated hand-to-genital conduct with C.S. while he lived in the home. J.W. testified that McAllister lived in the home between 1999 and 2002. Accordingly, we find a juror had sufficient evidence from which to reasonably find that McAllister repeatedly engaged in hand-to genital contact with C.S. from

17

1999 until 2002, a timeframe that clearly includes the period of August 28, 2000 to January 1, 2002. See Armstrong, 560 S.W.3d at 575 (internal quotation omitted) (noting "[a] jury is permitted to draw such reasonable inferences from the evidence as the evidence will permit" and that it is well within the jury's discretion to find credible a victim's testimony that the charged acts occurred when they did). The fact that the evidence also shows that some unlawful conduct may have occurred *before* the effective date of the statutory amendment in August 2000 does not preclude the jury from finding that the charged unlawful conduct continued into the timeframe identified in the jury instructions. See id. (internal quotation omitted) (noting "evidence is sufficient to support guilt if any reasonable inference supports guilt, even if other 'equally valid' inferences do not").

Because we find a claim disputing the sufficiency of the evidence for the convictions on first-degree statutory sodomy in Counts IX and X would not have been successful, appellate counsel was not ineffective for failing to bring a meritless claim on appeal. Tisius, 519 S.W.3d at 432; Schallon, 435 S.W.3d at 124–25. Because McAllister's claim is conclusively refuted by the record, the motion court did not err in denying the claim without an evidentiary hearing. See Smith, 467 S.W.3d at 306–07 (citing Rule 29.15(h)). Points Two and Three are denied.

**Points Four and Five—No Double Jeopardy**

In Points Four and Five, McAllister faults both trial counsel and appellate counsel for failing to challenge the jury instructions on the grounds of double jeopardy. Specifically, McAllister maintains he was improperly subjected to double jeopardy because he was charged under Count VIII of first-degree child molestation of J.W. based upon the same conduct for which he was charged for first-degree statutory rape in Counts V and VI. In particular, McAllister maintains that the genital-to-genital conduct underlying the charge of child

18

molestation in Count VIII is necessarily part of the sexual intercourse alleged in Counts V and VI, and thus the offenses are impermissibly premised on the same conduct.

When considering whether counsel was ineffective for failing to raise an issue of double jeopardy, we will affirm a motion court's denial of post-conviction relief where the claim is without merit because no double-jeopardy violation occurred. Smith, 467 S.W.3d at 307 (citing Tilley v. State, 202 S.W.3d 726, 738 (Mo. App. S.D. 2006)).

"The Fifth Amendment to the United States Constitution provides that '[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb.'" State v. Muldrew, 629 S.W.3d 99, 104 (Mo. App. E.D. 2021) (alteration and omission in original) (quoting U.S. CONST. Amend. V). The prohibition against double jeopardy "protects defendants not only from successive prosecutions for the same offense after either an acquittal or a conviction, but also from multiple punishments for the same offense." Id. (quoting State v. Liberty, 370 S.W.3d 537, 546 (Mo. banc 2012)). Here, McAllister argues he was subjected to multiple punishments for the same conduct of genital-to-genital contact.

To determine whether an individual's right to be free from double jeopardy was violated, we examine the relevant statutes. Smith, 467 S.W.3d at 307 (citing Tilley, 202 S.W.3d at 736). The test for double jeopardy is whether each offense has an element that is not part of the other offense. Id. (quoting Tilley, 202 S.W.3d at 736) ("[I]f each of the two offenses contains an element that the other lacks, the defendant may be convicted of both offenses without violating his double jeopardy rights.") (alteration in original). In Smith, the defendant argued that trial counsel was ineffective for failing to challenge that the charged offenses of enticement of a child and attempted second-degree statutory rape held him liable for the same conduct, thereby improperly subjecting him to double jeopardy. Id. at 307–08. The Southern District held that

19

each of those offenses had an element that was not part of the other offense in that enticement of a child requires an act or communication that "persuades, solicits, coaxes, entices, or lures" the child to engage in sexual conduct, while such words or conduct were not required elements of attempted second-degree statutory rape; vice-versa, attempted second-degree statutory rape required proof of an act strongly corroborative of the defendant's intent to engage in sexual intercourse with the victim, while such conduct was not required for enticement of a child. Id. at 308 (internal citations omitted). Additionally, while the defendant posited that the underlying conduct of the two offenses was the same—text messages that he sent to a child of a sexual nature—the prohibition against double jeopardy is a test of the statutory elements and is not violated merely because the State charges two crimes although the facts of the case show "but a single act of force." Id. (internal citations omitted); see also State v. Flores, 437 S.W.3d 779, 794 (Mo. App. W.D. 2014) (quoting State v. Polson, 145 S.W.3d 881, 896 (Mo. App. W.D. 2004)) (noting the State should not "split a single crime and prosecute it in separate parts").

In Smith, because each crime had an element not present in the other, no double-jeopardy violation occurred and, consequently, trial counsel was not ineffective for failing to raise a meritless objection or motion. 467 S.W.3d at 308 (citing Tilley, 202 S.W.3d at 738). Indeed, "[i]f there is no double jeopardy violation, a claim that counsel was ineffective for failure to object on double jeopardy grounds is moot." Couch v. State, 611 S.W.3d 605, 613 (Mo. App. E.D. 2020) (internal quotation omitted).

Here, the jury instructions mirrored the language of the criminal statutes. In order to determine whether trial or appellate counsel was ineffective for not raising a double-jeopardy claim, we must consider whether the offenses of first-degree child molestation and first-degree statutory rape each contain an element the other lacks. See Smith, 647 S.W.3d at 307 (citing

20

Tilley, 202 S.W.3d at 738). "A person commits the crime of child molestation in the first degree if he or she subjects another person who is less than fourteen years of age to sexual contact." Section 566.067. Section 566.010(3) defines "sexual contact" as "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, for the purpose of arousing or gratifying sexual desire of any person[.]" "A person commits the crime of statutory rape in the first degree if he has sexual intercourse with another person who is less than fourteen years old." Section 566.032.1. Sexual intercourse is defined as "any penetration, however slight, of the female sex organ by the male sex organ, whether or not an emission results." Section 566.010(4).

Comparing the elements of the two statutes and applicable definitions, it is clear that first-degree child molestation requires proof of additional facts than those required to prove first-degree statutory rape. See Smith, 467 S.W.3d at 307 (citing Tilley, 202 S.W.3d at 736). Specifically, first-degree child molestation requires the State to prove that the prohibited touching was for the purpose of arousing or gratifying the sexual desire of any person. The offense of first-degree statutory rape has no such requirement. See Sections 566.010(3), .032 .067. Likewise, first-degree statutory rape requires penetration, while child molestation does not. See Sections 566.010(3)–(4), .032, .067. Because each offense contains an element the other does not, the offenses of first-degree child molestation and first-degree statutory rape constitute separate and distinct offenses with which McAllister can be charged and cumulatively punished without subjecting him to double jeopardy. See Smith, 467 S.W.3d at 307 (internal citations omitted) (noting that the test for double jeopardy is limited to determining whether cumulative punishments were intended by the legislature, which is determined by comparing the elements of the relevant statutes). Therefore, the charges and convictions on first-degree child molestation

and first-degree statutory rape constitute separate offenses and do not implicate double jeopardy. See id. at 308 (internal citation omitted). Because a claim of double jeopardy would have been without merit, neither trial counsel nor appellate counsel were ineffective in failing to raise the claim. See Couch, 611 S.W.3d at 613 (internal citation omitted); Smith, 467 S.W.3d at 307 (citing Tilley, 202 S.W.3d at 738).

In challenging the constitutionality of his convictions, McAllister, like the defendant in Smith, focuses on the underlying conduct: genital-to-genital contact. See id. at 308. McAllister maintains that the jury instructions impermissibly allowed the jury to find him guilty of *both* child molestation and statutory rape *for the same acts* of genital-to-genital conduct. In making his argument on appeal that the jury instructions resulted in double jeopardy, McAllister raises the separate issue of jury unanimity in the context of multiple acts, relying on the discussion in Celis-Garcia. See Hogan, 631 S.W.3d at 573–75 (quoting Celis-Garcia, 344 S.W.3d at 155) ("For a jury verdict to be unanimous, the jurors must be in substantial agreement as to the defendant's acts, as a preliminary step to determining guilt.") (denying post-conviction relief where the movant's Rule 29.15 motion failed to show trial counsel was ineffective for failing to object to the jury instructions on grounds that they violated his right to a unanimous verdict on multiple acts of hand-to-vagina conduct). To the extent McAllister is now raising the issue of jury-unanimity as a basis for post-conviction relief, we note that a jury-unanimity claim was not included in his Rule 29.15 amended motion. See McFadden v. State, 619 S.W.3d 434, 446 (Mo. banc 2020) (internal citation omitted) (noting an appellate court cannot review a claim not raised in a Rule 29.15 amended motion as there is no plain-error review in appeals from post-conviction judgments). Because the unpreserved jury-unanimity claim is distinct from a double-jeopardy claim, we decline to review it. See State v. Walker, 549 S.W.3d 7, 13 n.2 (Mo. App. W.D. 2018)

22

(explaining that a claim of double jeopardy is separate from a Celis-Garcia claim concerning jury unanimity and declining to review the double-jeopardy claim where only the issue of jury unanimity was preserved).

Moreover, we note that the instructions in this case matched the language of the statutes, including the definitions of sexual contact and sexual intercourse. The jury instructions provide sufficient clarity to conclude that McAllister was charged and convicted of separate offenses with distinct elements. McAllister nonetheless argues that sexual intercourse necessarily requires genital-to-genital contact, thus he could not commit both offenses without being improperly subjected to double jeopardy. However, while every incidence of sexual intercourse presumably includes genital-to-genital contact, not every instance of genital-to-genital contact constitutes sexual intercourse. Cf. State v. Barbee, 568 S.W.3d 28, 33 n.7 (Mo. App. W.D. 2018) (entering a conviction for a lesser-included offense of first-degree child molestation when reversing a conviction for attempted first-degree rape on grounds that the evidence was sufficient to find that the defendant necessarily engaged in sexual contact when he engaged in sexual intercourse). Here, the record shows that the evidence at trial distinguished between occasions where sexual intercourse did and did not occur. The record shows that McAllister would place his penis between J.W.'s legs against her vagina and move back and forth as he counted aloud. J.W. testified that McAllister's penis would be held against her vagina while he counted aloud for a set amount of time, while in other instances McAllister's penis rubbed between her labia or penetrated her vagina. Therefore, given the evidence as to each offense, we are not persuaded McAllister was improperly subjected to cumulative punishments for the same instances of conduct, nor, as we determined above, was he subjected to double jeopardy for the offenses of first-degree child molestation and first-degree statutory rape. See State v. Cowles, 203 S.W.3d

23

303, 307–08 (Mo. App. S.D. 2006) (noting whether child molestation is a lesser included offense of statutory rape depends on the context of the evidence at trial); State v. Fewell, 198 S.W.3d 691, 696–97 (Mo. App. S.D. 2006) (finding the record refuted the defendant's claim that he was improperly convicted on both first-degree child molestation and statutory rape for the same penis-to-vagina conduct); State v. Clay, 909 S.W.2d 711, 715 (Mo. App. W.D. 1995) (noting the offenses of "sodomy, rape, and endangering the welfare of a child in the first degree each require proof of a fact or element not required by the other offenses[,]" thus are not "included offense[s]" such that the limitation on multiple convictions applies).

Finally, the single-act argument is not the legal test for double jeopardy, but rather we engage in an "uncomplicated" comparison of the statutory elements in order to glean the legislative intent. Tilley, 202 S.W.3d at 736 (internal quotation omitted) ("The analysis [for double jeopardy] focuses upon the statutory elements of each offense, rather than upon the evidence actually adduced at trial."). Because the required analysis of the two offenses shows each offense contains an element the other does not, a claim of double jeopardy would have been without merit. See Couch, 611 S.W.3d at 613 (internal citation omitted); Smith, 467 S.W.3d at 307 (citing Tilley, 202 S.W.3d at 736). Given that neither trial nor appellate counsel will be held ineffective for failing to raise the meritless claim of double jeopardy, McAllister has failed to meet his burden for post-conviction relief under the performance prong of the Strickland standard. See Tisius, 519 S.W.3d at 432 (finding counsel could not be deemed ineffective for failing to raise a meritless double-jeopardy claim); Hogan, 631 S.W.3d at 570 (internal citation omitted). The motion court did not err in denying McAllister's Rule 29.15 motion for post-conviction relief without an evidentiary hearing. See Couch, 611 S.W.3d at 613 (internal citation omitted); Smith, 467 S.W.3d at 306–07 (citing Rule 29.15(h)). Points Four and Five are denied.

24

Conclusion

The judgment of the motion court is affirmed in part and reversed in part. We remand on Point One for an evidentiary hearing on that claim in accordance with this opinion. The judgment is affirmed as to all other points on appeal.


_____
KURT S. ODENWALD, Presiding Judge

Kelly C. Broniec, J., concurs.
John P. Torbitzky, J., concurs.

25